LAMB ET AL. *v.* ARMCO, INC. ET AL., APPELLEES; HUBBELL, D.B.A. FAIRBANKS MOBILE WASH, APPELLANT.

(No. CA86-05-072—Decided December 31, 1986.)

*Casper & Casper* and *Arthur B. Casper,* for Edward L. Lamb, Jr., et al.

*Smith & Schnacke, James J. Gilvary* and *D. Jeffrey Ireland,* for Armco, Inc. et al.

*Fiehrer, Brewer, Cooney, Kash & Beane, Stephen J. Brewer* and *David L. Kash,* for Michael Hubbell.

*Per Curiam.* This cause came on to be heard upon an appeal from the Court of Common Pleas of Butler County.

This is an appeal by third-party defendant-appellant Michael Hubbell, d.b.a. Fairbanks Mobile Wash (hereinafter "Fairbanks"), from a decision of the Court of Common Pleas of Butler County which granted the motion for judgment on the pleadings against Fairbanks of third-party plaintiff-appellee Armco, Inc. (hereinafter "Armco").

On July 13, 1983, plaintiff Edward L. Lamb, Jr. was working for Fairbanks at an Armco facility removing mud from a tractor-trailer dump bed belonging to Armco. While he was cleaning the trailer's bed, an Armco employee unexpectedly raised it causing Lamb to tumble from it and thereby suffer injury.[1]

On July 9, 1985, Lamb filed suit against Armco for negligence. Armco responded, *inter alia,* by filing a third-party complaint against Fairbanks for indemnity based on the terms of a contract between Armco and Fairbanks, which provided, in pertinent part, that Fairbanks would indemnify Armco against the negligent acts of Armco employees which caused injury to Fairbanks employees.

On October 11, 1985, in response to Armco's third-party complaint, Fairbanks filed a counterclaim against Armco seeking contribution or indemnity from Armco for any damages awarded Lamb.

On December 3, 1985, Armco moved for judgment on the pleadings asking the court to find that Armco had a valid indemnity agreement with Fairbanks covering Lamb's injuries, and that Fairbanks' claim that the in-

---

[1] At the time this case was presented to this court, the court below had not yet determined the impact of Ohio Workers' Compensation statutes on this action and more particularly those statutes' impact, if any, upon the agreement in issue.

demnity agreement was invalid based on R.C. 2305.31 was meritless. Fairbanks responded with a memorandum in opposition in which it admitted the existence of the indemnity agreement but contended that it should be strictly construed against Armco and that, under such scrutiny, it would be found invalid in light of R.C. 2305.31, a statute which regulates indemnity agreements.

On March 26, 1986, the trial court filed an opinion in which it examined the Armco-Fairbanks indemnity agreement, the language of R.C. 2305.31, and the facts of the instant case. The court's opinion found R.C. 2305.31 did not invalidate the Armco-Fairbanks indemnity agreement because the task Lamb was hired to perform was "maintenance" as that term is used in R.C. 2305.31, but it was not maintenance upon an "appliance" as required by the statute in order to invalidate the agreement. Accordingly, on April 28, 1986, the trial court entered judgment on the pleadings for Armco against Fairbanks on the latter's counterclaim for indemnity or contribution from Armco.

Fairbanks appealed.

In its brief before this court, Fairbanks assigns a single assignment of error:

"The trial court erred in granting defendant/third-party plaintiff, Armco's motion for judgment on the pleadings."

The indemnity agreement between Armco and Fairbanks provides in pertinent part as follows:

"A. Indemnity — Contractor [Fairbanks] shall protect, indemnify and hold harmless Armco, any of its subsidiaries, and any of its or their employees, workmen, servants or agents ('Covered Parties') of and from any loss, cost, damage or expense arising from:

"(1) any and all claims which may be made against Armco, any of its subsidiaries, or any Covered Parties by reason of injury or death to person, or damage to property, suffered, or claimed to have been suffered, by any person, firm, corporation, or other entity, caused by, or alleged to have been caused by, any act or commission, negligent or otherwise, of Contractor or any subcontractor retained by or through Contractor, or of any of their employees, workmen, servants, or agents;

"* * *

"(3) any and all claims which may be made against Armco, any of its subsidiaries, or any Covered Parties by reason of injury or death to person, or damage to property, however caused, or alleged to have been caused, and even though claimed to be due to the negligence of Armco, any of its subsidiaries, or any Covered Parties, suffered, or claimed to have been suffered by Contractor or any subcontractor retained by or through Contractor or by any of their employees, workmen, servants or agents; * * *."

With the pertinent language italicized, R.C. 2305.31 provides as follows:

"*A covenant, promise, agreement, or understanding in, or in connection with or collateral to, a contract or agreement relative to the* design, planning, construction, alteration, repair, or *maintenance of a* building, structure, highway, road, appurtenance, and *appliance,* including moving, demolition, and excavating connected therewith, *pursuant to which contract or agreement the promisee,* or its independent contractors, agents or employees *has hired the promisor to perform work, purporting to indemnify the promisee,* its independent contractors, agents, employees, or indemnitees *against liability for damages arising out of bodily injury to persons*

or damage to property initiated or *proximately caused by or resulting from the negligence of the promisee, its independent contractors, agents, employees, or indemnitees is against public policy and is void.* Nothing in this section shall prohibit any person from purchasing insurance from an insurance company authorized to do business in the state of Ohio for his own protection or from purchasing a construction bond."

Because the court below agreed with Fairbanks that the cleaning work performed by Lamb on Armco's trailer was "maintenance," as that term is used in R.C. 2305.31, but disagreed that the trailer itself was an "appliance" based on the same statute, appellant now asks this court to interpret the word "appliance" as used in R.C. 2305.31.

For the reasons which follow we agree with the trial court that a semi-trailer is not an "appliance" as that term is used in R.C. 2305.31.

We begin our analysis of this problem by observing that R.C. 2305.31 does not provide a definition for "appliance." Accordingly, we must determine what that term means from the context of the statute and by giving the words used their common usage, R.C. 1.42.

In examining R.C. 2305.31, we are impressed by the terms the General Assembly has chosen to place with the word "appliance" — "building, structure, highway, road, appurtenance, and appliance, including moving, demolition, and excavating connected therewith." To even the unsophisticated reader these words strongly suggest a close association with, if not actual annexation to, real estate. At the very least, each of the words suggests the statute's subject matter is confined to naturally and ordinarily stationary objects.

In reviewing the most recently reported decisions on R.C. 2305.31, our observation with respect to the normally immobile nature of the statute's subject matter is confirmed. In *Kendall* v. *U.S. Dismantling Co.* (1985), 20 Ohio St. 3d 61, 64, 20 OBR 360, 362, 485 N.E. 2d 1047, 1050, a case which originated in this appellate district, the Ohio Supreme Court's opinion applied R.C. 2305.31 to an injury which took place during the dismantling of pipelines in a sulfuric acid plant. In *Hopkins* v. *Babcock & Wilcox Co.* (1985), 19 Ohio App. 3d 291, 19 OBR 462, 484 N.E. 2d 271, the Court of Appeals for Franklin County examined the applicability of R.C. 2305.31 in the construction of a Columbus trash-incineration facility. In *Brzeczek* v. *Standard Oil Co.* (1982), 4 Ohio App. 3d 209, 4 OBR 313, 447 N.E. 2d 760, the Court of Appeals for Lucas County applied R.C. 2305.31 to a case involving burns suffered by an employee while working at an oil refinery. In all these cases the work being performed was connected with a stationary object attached to real estate. We believe each of the above decisions suggests the purpose underlying R.C. 2305.31 is to require employers to provide employees with a *safe* place to work.

Having reached a preliminary conclusion about what "appliance" means as it is used in R.C. 2305.31, we searched other Ohio decisions for a definition of "appliance" which conforms with that conclusion. We have found two instructive decisions. In *Ohio Power Co.* v. *Deist* (1951), 154 Ohio St. 473, 43 O.O. 420, 96 N.E. 2d 771, paragraph two of the syllabus, the Ohio Supreme Court interpreted the word "appliance" contained in G.C. 9192-1 to include a conveyor belt used to transport coal from a coal field owned by a public utility to its electric generating station. Similarly, in

*Baltimore & Ohio RR. Co.* v. *McTeer* (1936), 55 Ohio App. 217, 5 O.O. 531, 9 N.E. 2d 627, the Court of Appeals for Hamilton County found a standing sand pipe used to transport sand to a tower from which the sand could be loaded into locomotives was an "appliance" as described in G.C. 9017.

Based upon these cases and the context in which "appliance" appears in R.C. 2305.31, we find the word "appliance" as used in R.C. 2305.31 should be interpreted to mean an accessory, fixture or attachment to real estate. Obviously, a semi-trailer does not fall within this definition.

Because a semi-trailer is not an appliance as described in R.C. 2305.31, that statute does not invalidate the Armco-Fairbanks indemnity agreement and the trial court's decision in favor of Armco based on said agreement was correct.[2]

Fairbank's assignment of error is overruled and the judgment of the trial court is affirmed.

The assignment of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, affirmed.

*Judgment affirmed.*

JONES, P.J., HENDRICKSON and CASTLE, JJ., concur.

CASTLE, J., retired, of the Twelfth Appellate District, sitting by assignment.

---

[2] We need not address whether a motion for judgment on the pleadings was a proper procedural mechanism for the trial court's decision here. Appellant has not raised that question in an assignment of error.