WADDELL et al.,

v.

**LTV STEEL COMPANY, INC. et al., Appellants; Northern RCR, Inc., Appellee.**

[Cite as *Waddell v. LTV Steel Co., Inc.* (1997), 124 Ohio App.3d 350.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 71811.

Decided Dec. 3, 1997.

352

*McNeal, Schick, Archibald & Biro Co., L.P.A.*, and *Paul W. Ziegler*, for appellants.

*Reminger & Reminger Co., L.P.A.*, and *Clifford C. Masch; Edison H. Hall, Jr.*, for appellee.

Rocco, Judge.

LTV Steel Co., Inc. ("LTV") and Richard Rigby appeal from a November 25, 1996 judgment of the common pleas court directing a verdict in favor of Northern RCR, Inc. ("RCR") and dismissing with prejudice LTV and Rigby's joint complaint for indemnity and contribution. We affirm based upon R.C. 2305.31 and related case law, which void indemnity and contribution clauses contained in a contract or agreement relative to the maintenance of a building or structure.

RCR contracted with LTV to perform routine maintenance on the kilns located at LTV's Grand River, Ohio plant. On July 26, 1991, Waddell, an employee of RCR, was injured when he fell from a dumpster which Richard Rigby, an LTV

employee, had lifted above the floor with a forklift. Four days later, LTV issued a purchase order, which contained the terms of its contract with RCR and included indemnification clauses. Both parties later stipulated that the purchase order contained the terms of their contract for the performance of kiln maintenance.

The indemnification clauses provided that RCR agreed to indemnify LTV against liability arising from personal injuries sustained by RCR, its employees, or by any other party, arising out of RCR's performance of the contract, and indemnify LTV for legal costs and attorney fees. They further provided that if any of LTV's employees participated in RCR's work by operating LTV equipment, they and the equipment would be respectively deemed, at that time, employees of RCR and equipment in RCR's sole custody and control. They also required RCR to purchase public liability, workers' compensation, property damage, and automobile insurance policies.

Thereafter, Waddell and his wife, in an amended complaint, commenced the instant case against LTV and Rigby, raising claims against both parties for negligence and loss of service, companionship, and consortium. LTV and Rigby subsequently filed a joint third-party complaint against RCR, seeking indemnity and contribution pursuant to the terms of the foregoing purchase order. All parties eventually filed summary judgment motions, which the court denied, and the case proceeded to trial.

Following the opening statement by counsel for LTV and Rigby, RCR moved for a directed verdict on LTV and Rigby's claim for indemnity and contribution. RCR argued that, pursuant to R.C. 2305.31, the purchase order's indemnification clauses violated public policy and contained no express waiver of RCR's workers' compensation immunity and, therefore, were void.

LTV and Rigby then contended that the clauses were valid, since R.C. 2305.31 applies to fixtures or appliances attached to real estate rather than to the forklift, which is mobile equipment, and since Rigby and the LTV equipment, pursuant to the indemnification clauses, were deemed to be under the sole control of RCR at the time Waddell was injured. LTV further argued that even if the indemnification clauses were void, the clause requiring RCR to indemnify LTV and Rigby for legal costs and attorney fees remained valid. LTV and Rigby also urged that RCR violated the indemnification clause, which required it to purchase public liability, personal property, and automobile insurance policies.

The court then granted RCR's directed verdict motion, stating in the transcript of proceedings at 26–27: "The Court has as a matter of law dismissed the third-party complaint of LTV on the indemnity agreement, finding that the statute, Revised Code Section 2305.31, is controlling. And that the indemnity agreement

is in violation of public policy." The Waddells then settled their claims against LTV and Rigby.

On November 25, 1996, the court journalized both the dismissal of LTV and Rigby's complaint against RCR and the settlement agreement and dismissal with prejudice of the Waddells' claims against LTV and Rigby. LTV and Rigby now appeal from only the dismissal of their indemnity and contribution claims against RCR, raising one assignment of error for our review.

The sole assignment of error states:

"Whether the trial court erred to the prejudice of defendants and third–party plaintiff–appellants, LTV Steel Co., Inc., and Richard Rigby, by directing a verdict on their third–party complaint in favor of third–party defendant–appellee, Northern RCR, Inc.?"

LTV and Rigby contend that the trial court erred when it directed the verdict in favor of RCR. They argue that R.C. 2305.31 does not render void the indemnification clauses because a forklift, rather than a fixture, was involved in Waddell's injury. They further contend that the language of the clauses evokes RCR's intent to waive its workers' compensation immunity, that the clauses requiring RCR to purchase insurance policies are valid, and that Ohio workers' compensation law does not render void the clauses with respect to the payment of attorney fees and costs.

RCR urges that the trial court did not err when it directed a verdict in RCR's favor. RCR contends that R.C. 2305.31 does render void the indemnification clauses because it prohibits indemnification agreements contained in contracts that involve the repair or maintenance of a building and its appliances. RCR further urges that the statute also renders void the clauses with respect to the indemnification of attorney fees and costs, that the language of the clauses does not evoke RCR's intent to waive its workers' compensation immunity, and that, since RCR retained such immunity, it was not required to purchase the insurance policies required by the purchase agreement.

The purchase order stated:

"12. PERSONAL INJURY, DEATH AND PROPERTY DAMAGE—By its acceptance of this order, Seller [in this case, RCR] *expressly agrees to defend, indemnify and save harmless* Buyer (as used in the Clause, 'Buyer' means and includes LTV Steel Company * * *) *from and against any and all liability, loss, damages, costs and expenses (including attorneys' fees), claims, suits and demands for any loss or damage to property or injuries to persons, including death, sustained by Buyer, its employees or its customers, or by Seller or its employees, or by any other party, arising out of the performance of any work * * * by Seller under this order.* Seller further expressly agrees that it is the

intent hereof that Seller shall assume all risk of such loss, damage or injuries, and shall absolve and indemnify Buyer therefrom whether or not such loss, damage or injuries are due to the sole or joint negligence of Buyer or its employees.

"In the event Buyer's machinery or equipment is used by Seller in the performance of any work that might be required under this Purchase Order, such machinery or equipment shall be considered as being under the sole custody and control of Seller during the period of such use by Seller, and if any person or persons in the employ of Buyer should be used to operate said machinery or equipment during the period of such use, such person or persons shall be deemed during such period of operation to be an employee or employees of Seller.

*"Seller expressly agrees that it may be joined as an additional or third-party defendant and may be held liable for damages, contribution or indemnity, in any action, at law or otherwise,* in which the employee or employees of Seller or any other person, their heirs, assigns or anyone otherwise entitled to receive damages by reason of injury or death brings an action against Buyer in respect thereof.

"13. INSURANCE—Where fulfillment of this Purchase Order requires Seller to perform work on the premises of Buyer * * * *Seller shall procure at its own cost and keep in force the following insurance* * * *:

*"(a) Workmen's Compensation Insurance, as required by the Workmen's Compensation laws of the state in which the work is being performed;* and

*"(b) Public liability and Property Damage insurance, including contractual liability insurance as required to cover liabilities assumed in Clause 12, and Automobile Liability and Property Damage insurance if automobiles, trucks, trailers or other vehicles are to be used."* (Emphasis added.)

Civ.R. 50(A)(4) provides that the trial court shall direct a verdict for the moving party "after construing the evidence most strongly in favor of the party against whom the motion is directed," if it "finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party." A motion for directed verdict raises a question of law, since it tests the legal sufficiency of the evidence. *Clark v. Southview Hosp. & Family Health Ctr.* (1994), 68 Ohio St.3d 435, 628 N.E.2d 46; *Keeton v. Telemedia Co. of S. Ohio* (1994), 98 Ohio App.3d 405, 648 N.E.2d 856.

■ Since the trial court in this case directed a verdict following counsel's opening statement, we take notice of *Brinkmoeller v. Wilson* (1975), 41 Ohio St.2d 223, 70 O.O.2d 424, 325 N.E.2d 233, in which the court stated at the syllabus:

"A trial court should exercise great caution in sustaining a motion for a directed verdict on the opening statement of counsel; it must be clear that all the facts expected to be proved, and those that have been stated, do not constitute a cause of action or a defense, and the statement must be liberally construed in favor of the party against whom the motion has been made."

In addition, the *Brinkmoeller* court stated at 227, 70 O.O.2d at 426, 325 N.E.2d at 236:

"[A] motion for non-suit is an admission .by defendant, for the purpose of the motion, of the truth of all the statements plaintiff proposes to establish by the evidence, leaving no disputed question of fact to be determined by the jury, the only remaining question being one of law for the court."

In the case before us, the facts are undisputed and only questions of law are presented for our review. We therefore need to determine whether, upon any determinative issue, reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to LTV and Rigby.

LTV and Rigby first argue that since Waddell's injuries involved a "piece of mobile equipment," *i.e.*, the forklift, R.C. 2305.31 is inapplicable and does not render void the indemnification clauses of the purchase order. RCR, however, contends that since the purchase order involved the maintenance of an appliance, *i.e.*, the kiln, R.C. 2305.31 controls the resolution of this case and voids the indemnification clauses.

R.C. 2305.31 states:

"A covenant, *promise,* agreement, or understanding *in,* or in connection with or collateral to, *a contract or agreement relative to the* design, planning, construction, alteration, repair, or *maintenance of a building, structure,* highway, road, appurtenance, *and appliance,* including moving, demolition, and excavating connected therewith, pursuant to which contract or agreement the promisee, or its independent contractors, agents or employees has hired the promisor to perform work, *purporting to indemnify the promisee,* its independent contractors, agents, employees, or indemnitees against liability *for damages arising out of bodily injury to persons or damage to property* initiated or proximately caused by or *resulting from the negligence of the promisee,* its independent contractors, agents, *employees,* or indemnitees is *against public policy and is void."* (Emphasis added.)

All parties essentially rely upon *Lamb v. Armco, Inc.* (1986), 34 Ohio App.3d 288, 291, 31 OBR 610, 613, 518 N.E.2d 53, 56, in which the court defined, for purposes of R.C. 2305.31, the term "appliance":

"[W]e find the word 'appliance' as used in R.C. 2305.31 should be interpreted to mean an accessory, fixture or attachment to real estate."

In *Lamb*, the injured party was an employee of an independent contractor who was hired to perform maintenance work upon a tractor-trailer dump truck. The *Lamb* court applied the foregoing definition of "appliance" and found that the truck was not an appliance. The court then concluded that since the underlying contract did not relate to the maintenance of a building, structure, or appliance, R.C. 2305.31 did not render void the challenged indemnification clauses.

 In our case, however, the kiln that Waddell participated in cleaning, purportedly measuring two hundred fifty feet in length, is obviously an "appliance" under the *Lamb* definition, since it is a fixture or attachment to the LTV plant. Compare *Kendall v. U.S. Dismantling Co.* (1985), 20 Ohio St.3d 61, 20 OBR 360, 485 N.E.2d 1047; *Moore v. Dayton Power & Light Co.* (1994), 99 Ohio App.3d 138, 650 N.E.2d 127; and *Brzeczek v. Std. Oil Co.* (1982), 4 Ohio App.3d 209, 4 OBR 313, 447 N.E.2d 760, in which R.C. 2305.31 was found to be applicable to contracts relating to the repair or maintenance of, respectively, pipelines at the work site, towers and equipment at electrical substations, and tanks or vessels located at the work site.

Therefore, since the kiln at the LTV work site constituted an "appliance," the purchase order between LTV and RCR, for the routine kiln maintenance work, constituted *a contract or agreement relative to the maintenance of a building, structure, and appliance,* pursuant to R.C. 2305.31. Accordingly, R.C. 2305.31 is applicable to the purchase order and the indemnification clauses are void as against public policy.

LTV and Rigby also contend that the trial court erred when it directed the verdict in favor of RCR because RCR, in the third paragraph of Section 12, "evoked" a waiver of its statutory and constitutional immunity under workers' compensation law. RCR denies this contention, arguing that it never expressed a specific waiver of such immunity. No claim is made that RCR is anything but a complying employer for purposes of workers' compensation.

In *Kendall*, the Ohio Supreme Court addressed this issue, stating:

"An employer in compliance with the workers' compensation laws of this state does not surrender its statutory and constitutional immunity from suits arising out of employment absent an express and specific waiver of that immunity. A general agreement of indemnity with a third party which does not specifically express the employer's intent to waive this particular immunity is ineffective for that purpose." *Id.*, 20 Ohio St.3d 61, 20 OBR 360, 485 N.E.2d 1047, paragraph two of the syllabus.

This court reviewed a similar situation in *Stalla v. Ohio Bell Tel. Co.* (Mar. 15, 1990), Cuyahoga App. No. 56512, unreported, 1990 WL 28817. Citing *Kendall,*

*supra,* we found "[n]o express and specific waiver of workers' compensation immunity in the subject agreement * * *." *Id.* at 6.

In support of their proposition that RCR "evoked" a waiver of its workers' compensation immunity, LTV and Rigby rely on *Glaspell v. Ohio Edison Co.* (1987), 29 Ohio St.3d 44, 29 OBR 393, 505 N.E.2d 264. In *Glaspell,* the Supreme Court upheld the enforceability of a general indemnity agreement. However, that indemnity agreement did not implicate the immunity accorded under workers' compensation statutes. In fact, the *Glaspell* court noted this distinction:

"In particular kinds of circumstances, Ohio has forbidden enforcement of indemnity agreements. See, *e.g.,* * * * *Kendall v. U.S. Dismantling Co.* (1985), 20 Ohio St.3d 61, 20 OBR 360, 485 N.E.2d 1047. However, *absent specified public policy exceptions,* the law of Ohio generally allows enforcement of indemnity agreements." (Emphasis added.) *Glaspell* at 46, 29 OBR at 395, 505 N.E.2d at 266.

In *Stalla, supra,* we further noted the distinction between those indemnification clauses that do implicate and those that do not implicate workers' compensation law, stating at 5–6: "[W]e note the absence of the specific public policy considerations present in cases involving workers' compensation."

In the case before us, we find that no portion of the indemnification clauses contains an express and specific waiver by RCR of its immunity under workers' compensation law. On the contrary, the indemnification clauses, at Section 13(a), required RCR to "[p]rocure at its own cost and *keep in force* * * * Workmen's Compensation Insurance, as required by the Workmen's Compensation laws of the state in which the work is being performed * * *." (Emphasis added.) Accordingly, RCR was immune from LTV and Rigby's action for indemnity and contribution.

LTV and Rigby next urge that the trial court erred when it directed the verdict in favor of RCR because RCR failed to purchase the public liability, property damage and automobile insurance policies, required by the indemnification clauses at Section 13(b). LTV and Rigby contend that the clauses requiring RCR to purchase the liability insurance policies are not rendered void by R.C. 2305.31. They further urge that RCR's failure to purchase the required insurance policies "[w]ould make [RCR] liable to LTV, at its selection, for either breach of contract, or for negligent default in performance of a duty imposed by the contract."

RCR argues that LTV's and Rigby's third-party complaint contained no claims against RCR sounding in contract or tort, with regard to RCR's obligation to purchase the insurance policies and, thus, this issue was never before the trial court. RCR further argues that R.C. 2305.31 renders void the indemnification clauses at Section 13(b). RCR also contends that since it was a complying

employer under workers' compensation law, it did not assume the liabilities articulated in the indemnification clauses at Section 12, and therefore was not obligated to purchase the liability insurance policies.

■ We first observe that LTV and Rigby did not raise this issue in the trial court. In fact, their complaint contained no cause of action against RCR sounding in either tort or contract, founded upon RCR's failure to purchase the insurance policies. On the contrary, LTV and Rigby's third-party complaint sought mere indemnity and contribution from RCR.

LTV and Rigby did argue, prior to and during the course of trial, that the indemnification clauses requiring RCR to purchase liability insurance policies constituted exceptions to R.C. 2305.31 [1] and asserted that RCR failed to purchase such insurance policies. However, they did not claim that, by failing to so purchase the liability insurance policies, RCR breached the contract or negligently defaulted in the performance of the contract, as they now assert on appeal. On the contrary, LTV and Rigby asserted that, since RCR failed to purchase the insurance policies, RCR might be held liable to indemnify LTV and/or Rigby "for the costs and expenses of defending Mr. Waddell's action against them, and for any damages arising therefrom."

Thus, LTV and Rigby raised no claim in the trial court, expressly or by implication, sounding in either contract or tort founded upon RCR's failure to purchase the liability insurance policies required by the indemnification clauses. Simply stated, the parties never raised, and the trial court neither litigated nor decided, the issue of whether RCR's failure to purchase the liability insurance policies *breached the contract or constituted a negligent default in performance of the terms of said contract.*

■ It is axiomatic that between the same parties in an action, a final judgment is conclusive as to all claims which were or might have been litigated. *State ex rel. White v. Franklin Cty. Bd. of Elections* (1992), 65 Ohio St.3d 45, 600 N.E.2d 656. *Res judicata,* therefore, precludes LTV and Rigby from commencing further contract or tort actions against RCR, because such claims could have been litigated in the case before us.

---

1. LTV and Rigby first raised and argued this issue in their November 14, 1994 brief in opposition to RCR's summary judgment motion. In its December 12, 1994 reply, RCR responded to the argument, to which response LTV and Rigby, on January 4, 1995, surreplied. RCR then addressed the issue in its November 12, 1996 trial brief and submitted a proposed jury instruction that mentioned the issue but specifically addressed the extent of RCR's workers' compensation immunity. Counsel for LTV and Rigby later addressed the issue when arguing against RCR's motion for directed verdict.

■ Regardless, the insurance clauses are not excepted from R.C. 2305.31, and, therefore, are void as against public policy. In *Kendall*, 20 Ohio St.3d 61, 20 OBR 360, 485 N.E.2d 1047, the Supreme Court stated:

"R.C. 2305.31 prohibits indemnity agreements, in the construction-related contracts described therein, whereby the promisor agrees to indemnify the promisee for damages caused by or resulting from the negligence of the promisee, regardless of whether such negligence is sole or concurrent." *Id.* at paragraph one of the syllabus.

In *Buckeye Union Ins. Co. v. Zavarella Bros. Constr. Co.* (1997), 121 Ohio App.3d 147, 699 N.E.2d 127, we recently concluded that an indemnification clause, which obligates the promisor to purchase a liability insurance policy that insures the promisee against that promisee's own negligence violates R.C. 2305.31. This conclusion comports with the broad language of R.C. 2305.31, which unambiguously states that any "agreement * * * in connection with or collateral to" a construction contract, that purports "to indemnify the promisee" for damages resulting from that promisee's own negligence, is void as against public policy.[2]

In *Brzeczek, supra,* the appellate court, when confronted with the same conclusion by its own trial court, did not specifically dispute the foregoing conclusion we reached in *Buckeye Union, supra.* Rather, the *Brzeczek* court held that R.C. 2305.31, was not intended to "[p]reclude the naming of more than one insured per insurance policy." *Id.* at 212, 4 OBR at 317, 447 N.E.2d at 763. Consequently, the court held that a provision in the subject construction contract, requiring the promisor to obtain liability insurance naming the promisee as an additional insured, was not violative of R.C. 2305.31.

Likewise, in *Buckeye Union*, we did not hold void a provision in the subject construction contract, which required the promisor to obtain liability insurance naming the promisee as an additional insured. However, we held that such provision was valid only because it did not purport to insure the promisee against his own negligence.

In our case, the relevant indemnification clauses required RCR to purchase liability insurance policies, covering the liabilities it allegedly assumed in Section 12 to indemnify and save LTV and its employees harmless from any loss, whether or not such loss was "[d]ue to the sole or joint negligence" of LTV or its employees. Since such insurance policies would have constituted agreements in

---

2. "Legislative intent is determined primarily from the language of the statute itself. 'Where the language itself clearly expresses the legislative intent, the courts need look no further.' * * * It is the duty of courts to give effect to the words used in the statute, not to delete words used or to insert words not used." *Kendall, supra,* 20 Ohio St.3d at 63–64, 20 OBR at 362, 485 N.E.2d at 1050, quoting *Katz v. Ohio Dept. of Liquor Control* (1957), 166 Ohio St. 229, 231, 2 O.O.2d 54, 55, 141 N.E.2d 294, 295–296.

connection with or collateral to a construction contract and would have purported to indemnify LTV for its own negligence, these policies would have been void as against public policy. Accordingly, the sections requiring the purchase of such policies are violative of R.C. 2305.31.

Furthermore, having already concluded that RCR is immune from LTV and Rigby's indemnity and contribution action, it becomes irrelevant whether RCR did or did not purchase the insurance policies. In essence, the indemnification clauses required RCR to purchase the insurance policies "as required to cover liabilities assumed in [Section] 12." Since we have found that the indemnification clauses contained therein were void, it follows that RCR never assumed the liabilities stated in Section 12, and, therefore, was not required to purchase the insurance policies.

LTV and Rigby finally contend that R.C. 2305.31, does not render void that portion of the indemnification clauses that requires RCR to "[d]efend, indemnify and save harmless" LTV "from and against any and all * * * costs and expenses (including attorneys' fees) * * * for any loss or damage to property or injuries to persons, including death, sustained by Buyer." Simply stated, LTV and Rigby seek costs and attorney fees from RCR.

In *Moore*, 99 Ohio App.3d at 141, 650 N.E.2d at 129–130, the court addressed the issue of whether an agreement to indemnify for attorney fees and costs was rendered void by R.C. 2305.31, stating:

"As we understand it, the language of the 'hold harmless' provision *does not purport to indemnify * * * against liability for damages arising out of bodily injury to persons, or damage to property,* and the provision is therefore beyond the scope of R.C. 2305.31." (Emphasis added.)

In our case, the indemnification clauses specifically state that RCR will indemnify LTV for attorney fees and costs arising from loss or damage to property or personal injury. Therefore, this clause falls within the scope of R.C. 2305.31, and is also void.

In its reply brief, LTV and Rigby argue that the trial court erred in directing the verdict in favor of RCR, since the trial court precluded the introduction of evidence regarding RCR's direct or contributory negligence. However, since RCR is a complying employer under workers' compensation law, it is immune from a negligence suit. See R.C. 4123.74; Section 35, Article II, Ohio Constitution. Thus, the introduction of such evidence would have been irrelevant and immaterial.

Accordingly, the trial court did not err when it directed the verdict in favor of RCR on LTV and Rigby's claims for indemnity and contribution. Therefore, LTV and Rigby's sole assignment of error is overruled.

*Judgment affirmed.*

DYKE, J., concurs.

PORTER, P.J., concurs in part and dissents in part.

PORTER, Presiding Judge, concurring in part and dissenting in part.

I agree with the majority that R.C. 2305.31 applies to the RCR indemnity agreement in Section 12 of the LTV purchase order, that the ducts to be cleaned in the kiln were an appliance or structure within the meaning of that statute, and that third-party defendant RCR did not expressly waive its immunity under workers' compensation law. However, I must respectfully dissent from my colleagues' conclusion that the separate contractual obligation of RCR to provide insurance under Section 13(b) of the purchase order was also void and against public policy under R.C. 2305.31.

In the first place, I take exception to the majority's conclusion that LTV waived the insurance requirement because it "did not raise this issue in the trial court." Civ.R 15(B) provides:

"When issues not raised by the pleadings are tried by express or implied consent of the parties they shall be treated in all respects as if they had been raised in the pleadings. * * * Failure to amend as provided herein does not affect the result of the trial of these issues."

The fact remains that RCR's contractual obligation to purchase insurance was raised and addressed in the summary judgment proceedings by both parties two years before trial. Further, RCR responded to these arguments in its reply to LTV's brief opposing summary judgment filed December 12, 1994. The issue was raised and argued again in RCR's trial brief filed on November 12, 1996. RCR submitted proposed jury instruction No. 8 on November 12, 1996, which covered the insurance issue. Further, LTV counsel again raised the issue of the applicability of the insurance clause during oral argument regarding RCR's motion for directed verdict on opening statement, and counsel for RCR responded to the argument, without objecting that the matter had not been pleaded in the third-party complaint.

In short, RCR consented to the inclusion of the insurance clause issue in this case, and the majority is mistaken in concluding otherwise. In my judgment, it was treated as an issue in the case from early on by both parties and therefore

was tried by implied consent of the parties pursuant to Civ.R. 15(B). *Greathouse v. Barberton* (Nov. 28, 1990), Summit App. No. 14629, unreported, 1990 WL 190361 (issue raised in summary judgment motion acts as amendment to complaint); *Porter Hybrids, Inc. v. Pontious* (Aug. 20, 1984), Clinton App. No. CA83–09–012, unreported, 1984 WL 3408 (issues brought up in motion for summary judgment and closing argument which were not objected to were tried by implied consent); *In re Zweibon* (C.A.D.C. 1977), 565 F.2d 742, 747 ("Process of amendment may be initiated by presentation of an issue for the first time in a motion for summary judgment."); cf. *Austintown Local School Dist. Bd. of Edn. v. Mahoning Cty. Bd. of Mental Retardation & Dev. Disabilities* (1993), 66 Ohio St.3d 355, 365, 613 N.E.2d 167, 175–176 (since issue not raised in motion for summary judgment, issue not tried by implied consent).

On the merits of the insurance issue, it is my opinion that third-party plaintiff LTV has made out a potential claim for relief on the contractual requirement of Section 13 of the purchase order, which states that RCR "shall procure at its own cost and keep in force the following insurance satisfactory to [LTV] as to the form and limitations of liability until completion and final payment hereunder.

"* * *

"(b) Public liability and property damage insurance including contractual liability insurance as required to cover liabilities assumed in clause 12 * * *."

This obligation to supply public liability insurance in favor of, and satisfactory to, LTV was a separate undertaking and contractual commitment by RCR apart from the indemnity provision, which I agree is void under R.C. 2305.31. The majority refuses to recognize this distinction and confuses an agreement to supply insurance with indemnification clauses. However, it is our role "to discover and effectuate the intent of the parties [which] is presumed to reside in the language they chose to use in their agreement." *Graham v. Drydock Coal Co.* (1996), 76 Ohio St.3d 311, 313, 667 N.E.2d 949, 952. It was obviously the intent of the parties that RCR provide public liability insurance as to form and limits satisfactory to LTV during the performance of the contract. In my judgment, this brings this case squarely within the holding of *Brzeczek v. Std. Oil Co.* (1982), 4 Ohio App.3d 209, 4 OBR 313, 447 N.E.2d 760, which held that "a provision in a construction contract requiring that the promisor obtain liability insurance naming the promises as an additional insured is not null and void due to the application of R.C. 2305.31 and is not contrary to public policy."

If it does not violate R.C. 2305.31 to make Standard Oil an additional insured on its contractor's general liability insurance policy, it follows that no violation occurs when RCR is required to supply public liability coverage in favor of LTV in form and limits satisfactory to it.

The decision of this court in *Buckeye Union Ins. Co. v. Zavarella Bros. Constr. Co.* (1997), 121 Ohio App.3d 147, 699 N.E.2d 127, does not require a different result. There we agreed that "the additional insured agreement does not violate public policy, but that the express language of the policy does not afford coverage under the circumstances." *Id.* at 148, 699 N.E.2d at 128. This court found that the policy language as written did not provide coverage to Snavely, the general contractor, for its negligence, but only for the negligence of Zaverella, the subcontractor. *Id.* at 151–152, 699 N.E.2d at 130. In the instant case, the policy does not appear in the record and we do not know whether RCR fulfilled its contractual obligation to furnish public liability coverage satisfactory to LTV "as to the form and limitations." Nor do I accept the majority's conclusion that it is "irrelevant whether RCR did or did not purchase the insurance policies" because they would have covered contractual obligations found to be void in Section 12.

I note that the insurance purchase provision in *Brzeczek* required the contractor to obtain for Standard Oil's benefit comprehensive general liability insurance that "shall contain provisions insuring the contractual liability assumed hereunder," naming Standard Oil as an additional assured. *Brzeczek* is on all fours with the instant case, where RCR was also required to furnish public liability insurance "including contractual liability insurance as required to cover liabilities assumed in clause 12."

Although *Brzeczek* found the indemnity provisions void, as we do, it upheld the obligation to purchase insurance for the owner's benefit, relying on the last sentence of R.C. 2305.31, which encouraged the purchase of insurance. In reviewing the trial court's decision, the *Brzeczek* court stated as follows at 4 Ohio App.3d at 211–212, 4 OBR at 316–317, 447 N.E.2d at 763–764:

"The trial court analyzed the second sentence of R.C. 2305.31, which is as follows:

" 'Nothing in this section shall prohibit any person from purchasing insurance from an insurance company authorized to do business in the [s]tate of Ohio for his own protection or from purchasing a construction bond.'

"The court found that this sentence permits the purchase of insurance only for one's own benefit and that the purchase of insurance for another's protection would contravene the purpose of R.C. 2305.31. The trial court stated that:

" 'In interpreting this second sentence, it is the Court's opinion that the only insurance contracts excepted from the statute are those purchased 'from an insurance company authorized to do busieness [*sic*] in the state of Ohio' and purchased for one's 'own protection.' Construction contracts requiring a promisor to purchase insurance for the promisee's protection against the promisee's

own negligence do not fall within this exception and are null and void under the first sentence of § 2305.31.'

"We do not read R.C. 2305.31 as voiding the insurance contracts procured by Tulsa Tank, wherein Standard Oil is an additional insured. The trial court's interpretation would preclude the naming of more than one insured per insurance policy. Such a restriction was clearly not the intent of the legislature. It is common practice to name several parties as insureds in a policy, each having different liabilities. See 43 American Jurisprudence 2d 312, Insurance, Section 253, where it states:

" 'Where several persons are insured under one policy, the rights and obligations of one insured are not necessarily dependent upon those of another insured, and the insurance company may undertake separate and distinct obligations to the various insureds. Insurance policies may name additional insureds by their definition of the term "insured." This is particularly true in liability policies.' "

The *Brzeczek* decision followed the wise course of recognizing a distinction between the indemnification provision, which was void under R.C. 2305.31, and the contractual requirement to provide insurance, which was fully supported by the construction given similar provisions in Illinois and New York.

I again cite *Brzeczek*, where the court explained the rationale of upholding the insured contractual provision by citing other leading cases as follows at 4 Ohio App.3d at 212–213, 4 OBR at 317–318, 447 N.E.2d at 764:

"We also find the analysis of the Court of Appeals of New York in *Bd. of Edn. v. Valden Associates, Inc.* (1979), 46 N.Y.2d 653 [416 N.Y.S.2d 202] 389 N.E.2d 798, persuasive. The court at 657 [416 N.Y.S.2d at 203, 389 N.E.2d at 799], states as follows:

" '* * * A distinction must be drawn between contractual provisions which seek to exempt a party from liability to persons who have been injured or whose property has been damaged and contractual provisions, such as those involved in this suit, which in effect simply require one of the parties to the contract to provide insurance for all of the parties. Absent any indication of overreaching or unconscionability, such provisions violate neither Section 5–323 of the General Obligations Law nor any other public policy * * *.'

"The court in *Valden, supra,* relied on *Hogeland v. Sibley, Lindsay & Curr Co.* (1977), 42 N.Y.2d 153, 161 [397 N.Y.S.2d 602, 607] 366 N.E.2d 263, [267], which held as follows:

" 'It is against this background of declared purpose that the indemnification clauses before us must be considered. So analyzed, Berenson is not exempting itself from liability to the victim for its own negligence. Rather, the parties are

allocating the risk of liability to third parties between themselves, essentially through the employment of insurance. Courts do not, as a general matter, look unfavorably on agreements which, by requiring parties to carry insurance, afford protection to the public. * * *'

"See, also, *Buscaglia v. Owens–Corning Fiberglas* (1961), 68 N.J.Super. 508, 172 A.2d 703.

"We find that a contractual provision such as paragraph 8 is not null and void due to the application of R.C. 2305.31 and is not contrary to public policy. We, therefore, find the second assignment of error well taken."

The Illinois courts have a long history of dealing with a statutory provision similar to R.C. 2305.31 and, in doing so, draw a sharp distinction between pure indemnity agreements and agreements to procure insurance in like circumstances. This was summarized most recently in *GTE N., Inc. v. Henkels & McCoy, Inc.* (1993), 245 Ill.App.3d 322, 329, 184 Ill.Dec. 215, 220, 612 N.E.2d 1375, 1380, as follows:

"Some uncertainty concerning the public purpose of the Act arises from the decisions in *Davis [v. Commonwealth Edison Co.* (1975), 61 Ill.2d 494, 336 N.E.2d 881] and *Capua [v. W.E. O'Neil Constr. Co.* (1997), 67 Ill.2d 255, 10 Ill.Dec. 216, 367 N.E.2d 669], because both liability insurance and indemnity agreements negate incentive to be careful since they relieve the insured and the indemnitee from ultimate responsibility for their negligence. However, the two decisions, taken together, seem to express a policy in regard to indemnity agreements in construction contracts, which is as follows: (1) indemnity agreements, except in construction bonds and agreements to insure to protect the indemnitor from contractual liability, are void because the dominant aspect of these agreements is the disincentive to the exercise of care by the indemnitee which results; and (2) indemnity agreements in construction bonds and agreements to provide liability insurance for another party to the contract, even though that party is an indemnitee, are valid because their dominant aspect is to afford a source of funds for persons tortiously injured in the work on the construction contract."

It is my view that this court should recognize the same distinctions that other leading jurisdictions do in making insurance coverage available to injured workers where the parties have contracted to supply same.

Given the foregoing discussion, since the record does not reveal whether RCR procured the insurance required by Section 13(b), I would reverse the directed verdict on the insurance issue and remand the cause for further proceedings consistent with this opinion. In the alternative, I would certify the majority decision to the Ohio Supreme Court as in conflict with the *Brzeczek* case.