BRZECZEK *v.* STANDARD OIL CO., APPELLANT; TULSA TANK CLEANING CO. ET AL, APPELLEES.

(No. L-81-281—Decided June 11, 1982.)

*Mr. H. Vincent E. Mitchell* and *Mr. Frederick R. Nance,* for appellant.

*Mr. James E. Brazeau,* for appellees Tulsa Tank Cleaning Company and St. Paul Companies.

POTTER, J. Defendant and third-party plaintiff, Standard Oil Company (Standard Oil), appeals the dismissal of its third-party action against Tulsa Tank Cleaning Company (Tulsa Tank) and St. Paul Companies (St. Paul) by the Court of Common Pleas of Lucas County.

The original action was instituted by Raymond Brzeczek, an employee of Tulsa Tank. On or about July 3, 1978, in the course of his employment, hot asphalt spilled onto his legs and body. This injury occurred while he was employed on the premises of defendant Standard Oil's refinery in Oregon, Ohio. Plaintiff alleged that the injury was the result of the negligence of Standard Oil, its agents, employees and servants.

Pursuant to a contractual agreement, Standard Oil requested that Tulsa Tank defend the action and hold Standard Oil harmless. The contractual agreement entered into on or about August 30, 1977, provided that Tulsa Tank, as an independent contractor, would clean and remove the sludge from the tanks or vessels located on Standard Oil's premises during the period beginning September 1, 1977, through August 31, 1978. The contract contained an indemnity clause which provides in pertinent part as follows:

"10. INDEMNIFICATION: (a) In General — CONTRACTOR hereby indemnifies and agrees to defend and save OWNER and its affiliated Corporations, their agents, servants and employees harmless from all liabilities and claims for loss, damage or injury to or death of persons or property, including property of OWNER, in any manner arising out of or in connection with the WORK, *unless initiated or proximately caused or resulting from the negligence of OWNER,* its other independent contractors, agents, employees or indemnitees, and to pay all damages, costs and expenses, including attorneys' fees, arising in connection therewith * * *." (Emphasis added.)

Paragraph 8 of the contract required that Tulsa Tank obtain insurance coverage including comprehensive general liability insurance naming Standard Oil as an additional insured on the policy. Tulsa Tank provided an insurance certificate indicating that St. Paul was providing insurance coverage. In light of these provisions, Standard Oil requested that Tulsa Tank defend this action. After Tulsa Tank refused, Standard Oil commenced a third-party action naming Tulsa Tank and St. Paul as third-party defendants, alleging a breach of the indemnity provision and the insurance provision of their contract.

Plaintiff Raymond Brzeczek and Standard Oil entered into a settlement agreement releasing Standard Oil from any liability. Standard Oil then amended the third-party complaint seeking recovery of the $15,000 paid to plaintiff and $2,500 for attorney's fees.

Summary judgment motions were filed by Standard Oil and also jointly by third-party defendants Tulsa Tank and St. Paul. After a hearing, the trial court denied Standard Oil's motion for summary judgment, granted third-party defendants' joint motion, and dismissed with prejudice Standard Oil's third-party complaint.

In reaching this determination, the trial court addressed the application of R.C. 2305.31 to the contract between Standard Oil and Tulsa Tank. R.C. 2305.31 provides:

"A covenant, promise, agreement, or understanding in, or in connection with or collateral to, a contract or agreement relative to the design, planning, construction, alteration, repair, or maintenance of a building, structure, highway, road, appurtenance, and appliance, including moving, demolition, and excavating connected therewith, pursuant to which contract or agreement the promisee, or its independent contractors, agents or employees has hired the promisor to perform work, purporting to indemnify the promisee, its in-dependent contractors, agents, employees, or indemnities against liability for damages arising out of bodily injury to persons or damage to property *initiated or proximately caused by or resulting from the negligence of the promisee*, its independent contractors, agents, employees, or indemnities *is against public policy and is void*. Nothing in this section shall prohibit any person from purchasing insurance from an insurance company authorized to do business in the state of Ohio for his own protection or from purchasing a construction bond." (Emphasis added.)

The trial court found that this section prohibited Tulsa Tank from purchasing insurance for Standard Oil's protection against Standard Oil's own negligence. The court therefore concluded that Standard Oil could not benefit from any insurance policy obtained by Tulsa Tank.

Standard Oil appeals and raises the following assignments of error:

"1. The trial court erred in granting the joint motion for summary judgment of third-party defendants and appellees, Tulsa Tank Cleaning Company and St. Paul Companies when there was insufficient evidence to show that there was no genuine issue as to Tulsa Tank Cleaning Company's obligation to indemnify third-party plaintiff and appellant, the Standard Oil Company, under paragraph 10 of the contract between the parties.

"2. The trial court erred in granting the joint motion for summary judgment of third-party defendants and appellees, Tulsa Tank Cleaning Company and St. Paul Companies, and in denying the summary judgment motion of third-party plaintiff and appellant, The Standard Oil Company, when it ruled as a matter of law that Section 2305.31 of the Ohio Revised Code nullified Tulsa Tank Cleaning Company's obligation to obtain insurance coverage in favor of The Standard Oil Company against plaintiff Raymond Brzeczek's claim under paragraph 8 of the contract between the parties."

As to Assignment of Error No. 1, Standard Oil alleges that summary judgment was improper because there were unresolved questions of fact regarding the proximate cause of plaintiff Brzeczek's injuries. Standard Oil further contends that the trial court erred in finding that the settlement of plaintiff's claim established Standard Oil's negligence and precluded it from litigating this issue. These arguments relate to paragraph 10 of the contract between Standard Oil and Tulsa Tank. We find these arguments are stressed in this court but not in the trial court. Standard Oil's motion for summary judgment and memorandum in support thereof were directed to the obligation to procure insurance pursuant to paragraph 8 of the contract and St. Paul's liability, if any.

The motion for summary judgment of the third-party defendants was directed to paragraph 8. The theory advanced was that R.C. 2305.31 was a bar to the enforcement of paragraph 8.

It was in this posture the motions were presented to the trial court. Oral argument was held on the motions. We find the following statement by counsel for Standard Oil:

"MR. NANCE: I think what we have just discussed bears on the third issue which was raised in our brief in opposition. That was Section 2305.31 of the Ohio Revised Code nullifies the coverage which was obtained.

"It is respectfully submitted that this is the only real issue in this case, and that the *decision on that issue will dispose of both of our motions for summary judgment.*" (Emphasis added.)

While the trial court alluded to paragraph 10 and Standard Oil's voluntary settlement, the thrust of that court's decision is that R.C. 2305.31 nullifies paragraph 8.

Standard Oil, having elected in the trial court to make its stand on paragraph 8, we find that its arguments come too late in this court. Therefore, Assignment of Error No. 1 is not well taken.

In its second assignment of error, third-party plaintiff-appellant alleges that the trial court erred in finding that R.C. 2305.31 prohibits a contractual agreement requiring that a promisor (Tulsa Tank) obtain liability insurance to cover a promisee's (Standard Oil's) negligence.

Paragraph 8 of the contract requiring the purchase of insurance by Tulsa Tank is as follows:

"Prior to the commencement of any of the work, CONTRACTOR [Tulsa Tank] shall obtain and maintain in force at its sole cost and expense, the following insurance coverages * * * Comprehensive General and Automobile Liability Insurance (covering use of owned, non-owned or hired vehicles) with limits of: Bodily injury — $300,000/occurrence, Property Damage — $100,000/occurrence. Such liability insurance shall contain provisions insuring the contractual liability assumed hereunder, naming OWNER [Standard Oil] as an additional insured with respect to the work under this contract and providing that such insurance is primary to any liability insurances carried by OWNER."

The trial court analyzed the second sentence of R.C. 2305.31, which is as follows:

"Nothing in this section shall prohibit any person from purchasing insurance from an insurance company authorized to do business in the state of Ohio for his own protection or from purchasing a construction bond."

The court found that this sentence permits the purchase of insurance only for one's own benefit and that the purchase of insurance for another's protection would contravene the purpose of R.C. 2305.31. The trial court stated that:

"In interpreting this second sentence, it is the Court's opinion that the only insurance contracts excepted from the statute are those purchased 'from an insurance company authorized to do bus-

ienss [*sic*] in the state of Ohio' *and* purchased for one's 'own protection.' Construction contracts requiring a promisor to purchase insurance for the promisee's protection against the promisee's own negligence do not fall within this exception and are null and void under the first sentence of § 2305.31."

We do not read R.C. 2305.31 as voiding the insurance contracts procured by Tulsa Tank, wherein Standard Oil is an additional insured. The trial court's interpretation would preclude the naming of more than one insured per insurance policy. Such a restriction was clearly not the intent of the legislature. It is common practice to name several parties as insureds in a policy, each having different liabilities. See 43 American Jurisprudence 2d 312, Insurance, Section 253, where it states:

"Where several persons are insured under one policy, the rights and obligations of one insured are not necessarily dependent upon those of another insured, and the insurance company may undertake separate and distinct obligations to the various insureds. Insurance policies may name additional insureds by their definition of the term 'insured.' This is particularly true in liability policies."

R.C. 2305.31 was intended to prevent parties to construction contracts from avoiding liability for their own negligence and to require that they remain responsible for the maintenance of a safe work place. While legislative intent can be determined by examining the statutory language, we draw on the analysis provided for a similar statute enacted in Illinois. Section 1 of Ill. Rev. Stat. 1973, chap. 29, par. 61, is similar to the indemnity provision of R.C. 2305.31; Section 3 (par. 63) is analogous to the second sentence of R.C. 2305.31. The Illinois court in *Capua* v. *W. E. O'Neil Constr. Co.* (1977), 67 Ill. 2d 255, 260, 367 N.E. 2d 669, 672, addressed the legislative intent behind Section 3 as it related to construction bonds and, by analogy, insurance:

"* * * Section 1, without more, would deny the worker the possibility of recovering from the surety because it would void the indemnity or hold harmless agreement in the construction bond. It is reasonable to conclude that the legislature, knowing that construction bonds are frequently used as a means to assure compensation for injured workers, enacted section 3 so that this potential source of compensation for injured workers would be preserved. Section 3 serves to complement section 1.

"In *Davis* [v. *Commonwealth Edison Co.* (1975), 61 Ill.2d 494, 336 N.E.2d 881], this court said that section 1 may well have been intended by the legislature to protect the construction worker and the general public from suffering construction-related injuries by encouraging accident-prevention measures. Today we observe that section 3 may well have been intended by the legislature to protect construction workers or members of the general public who have suffered construction-related injuries by allowing them recovery against construction-bond sureties. As can be seen, sections 1 and 3 are harmonious; they evidence a legislative intendment to protect the interests of the construction worker and the general public."

Cf. *Vandygriff* v. *Commonwealth Edison Co.* (1980), 87 Ill. App. 3d 374, 408 N.E.2d 1129.

We also find the analysis of the Court of Appeals of New York in *Bd. of Edn.* v. *Valden Associates, Inc.* (1979), 46 N.Y. 2d 653, 389 N.E. 2d 798, persuasive. The court at 657, states as follows:

"* * * A distinction must be drawn between contractual provisions which seek to exempt a party from liability to persons who have been injured or whose property has been damaged and contractual provisions, such as those involved in this suit, which in effect simply require one of the parties to the contract to provide insurance for all of the parties. Absent any indication of overreaching or un-

conscionability, such provisions violate neither section 5-323 of the General Obligations Law nor any other public policy * * *."

The court in *Valden, supra,* relied on *Hogeland* v. *Sibley, Lindsay & Curr Co.* (1977), 42 N.Y. 2d 153, 161, 366 N.E. 2d 263, which held as follows:

"It is against this background of declared purpose that the indemnification clauses before us must be considered. So analyzed, Berenson is not exempting itself from liability to the victim for its own negligence. Rather, the parties are allocating the risk of liability to third parties between themselves, essentially through the employment of insurance. Courts do not, as a general matter, look unfavorably on agreements which, by requiring parties to carry insurance, afford protection to the public. * * *"

See, also, *Buscaglia* v. *Owens-Corning Fiberglas* (1961), 68 N.J. Super. 508, 172 A. 2d 703.

We find that a contractual provision such as paragraph 8 is not null and void due to the application of R.C. 2305.31 and is not contrary to public policy. We, therefore, find the second assignment of error well taken.

On consideration whereof, this court finds that substantial justice has not been done the party complaining, and the judgment of the Court of Common Pleas of Lucas County is reversed.

This cause is remanded to said court for further proceedings according to law. Costs assessed against appellees, Tulsa Tank Cleaning Company and St. Paul Companies.

*Judgment reversed and cause remanded.*

BARBER and WILEY, JJ., concur.

WILEY, J., retired, of the Sixth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.