**CHRYSLER CORPORATION, Defendant Third–Party Plaintiff Below, Appellant,**

v.

**MERRELL & GARAGUSO, INC., Third Party Defendant Below, Appellee.**

**No. 38,2001.**

Supreme Court of Delaware.

Submitted: March 5, 2002.
Decided: April 30, 2002.

---

40. *Id.*

Daniel F. Wolcott, Jr. (argued) and David E. Moore, Potter Anderson & Corroon, LLP, Wilmington, for Appellant.

Daniel P. Bennett, Heckler & Frabizzio, Wilmington, for Appellee.

Anthony G. Flynn and Timothy Jay Houseal, Young, Conaway, Stargatt & Taylor, LLP, Wilmington and Andrew B. Cohn, Kaplin Stewart Meloff Reiter & Stein, Blue Bell, Pennsylvania, for Amicus Curiae American Subcontractors Association.

Before VEASEY, Chief Justice, WALSH, HOLLAND, BERGER, and STEELE, Justices, constituting the Court En Banc.

WALSH, Justice:

In this appeal from the Superior Court, we address a question of first impression: Does the statutory restriction in 6 *Del. C.* § 2704, which precludes an owner from requiring a contracting party to indemnify against the indemnitee's own negligence, also invalidate the enforceability of liability insurance purchased for the benefit of the owner? The Superior Court ruled that the statute served to invalidate a contractual provision requiring the purchase of insurance naming the owner as an insured. While we agree that the requirement to purchase insurance may, under certain circumstances, be unenforceable, we reject the inference that such insurance, once secured, is unenforceable against the issuer of the insurance. Accordingly, we affirm in part and reverse in part the decision of the Superior Court.

I

The underlying dispute was precipitated by an injury sustained by Brian Keech ("Keech"), an employee of the appellee, Merrell and Garaguso, Inc. ("Merrell") on May 26, 1993, while Merrell was doing masonry construction at the Chrysler plant in Newark, Delaware. Apparently, the injury resulted from the conduct of a Chrysler employee who, while operating a forklift, caused a fence to fall on Keech. Keech subsequently filed suit against Chrysler for the negligence of its employee. Chrysler, in turn, brought a third party action against Merrell claiming that under the terms of the contract between Chrysler and Merrell, Merrell was required to indemnify and defend Chrysler from all claims arising under the construction contract.

The contract between Merrell and Chrysler for the Newark plant work consisted of a purchase order that contained form language which, in effect, required Merrell to indemnify Chrysler for all claims for property damage and personal injuries arising under the contract, including instances where Chrysler might be liable by reason of its own negligence. In March 1993, prior to Keech's injury, Merrell provided Chrysler with a policy of liability insurance issued by Pennsylvania National Mutual Casualty Insurance Company ("Penn National") purporting to name Chrysler as an additional insured. Apparently, to date Penn National has refused to acknowledge Chrysler as an insured and that dispute is the subject of separate litigation in the Superior Court.

The parties filed cross motions for summary judgment on the extent of Merrell's duty to defend Keech's claim. The Superior Court, applying this Court's ruling in *Alberici Const. Co., Inc. v. Mid–West Conveyor Co., Inc.,* 750 A.2d 518 (Del.2000),

ruled that the indemnification provision was unenforceable and that the provision requiring Merrell to secure insurance was also void as an indirect requirement to indemnify. Chrysler has appealed that ruling.

## II

This appeal requires that we once again consider the meaning and scope of the indemnification restrictions set forth in 6 *Del. C.* § 2704 which provides, in pertinent part:

> § 2704. **Exculpatory clauses in certain contracts void.**
>
> (a) A covenant, promise, agreement ... relative to the construction, alteration, repair or maintenance of a ... building, structure, appurtenance or appliance, ... purporting to indemnify or hold harmless the promisee or indemnitee or others, or their agents, servants and employees, for damages arising from liability for bodily injury or death to persons or damage to property caused partially or solely by, or resulting partially or solely from, or arising partially or solely out of the negligence of such promisee or indemnitee or others than the promisor or indemnitor, or its subcontractors, agents, servants or employees, is against public policy and is void and unenforceable, even where such covenant, promise, agreement or understanding is crystal clear and unambiguous in obligating the promisor or indemnitor to indemnify or hold harmless the promisee or indemnitee from liability resulting from such promisee's or indemnitee's own negligence....
>
> (b) Nothing in subsection (a) of this section shall be construed to void or

render unenforceable policies of insurance issued by duly authorized insurance companies and insuring against losses or damages from any causes whatsoever.

In *Alberici*, this Court construed § 2704(a) as expressing a "legislatively defined public policy" precluding contractual indemnification for a party's own negligence. *Alberici*, 750 A.2d at 519. Chrysler contends, however, that the policy reach of § 2704(a) does not extend to the insurance aspect of indemnification and, indeed, § 2704(b) is quite explicit in preserving the enforceability of insurance "against losses or damages from any cause whatsoever." Merrell, to the contrary, maintains that the Superior Court correctly determined that enforcement of the "insurance purchase" provision in the contract would constitute an "end-run" around the clear non-indemnification policy set forth in § 2704(a) and render the legislative intent meaningless.[1]

The Superior Court noted that there was a "potential factual dispute" as to whether Merrell secured an endorsement naming Chrysler as an additional insured, but assumed that it had done so for purposes of the summary judgment motions. Despite that assumption, the Superior Court granted summary judgment in favor of Merrell because Merrell's "contractual obligation to obtain insurance coverage for Chrysler for its own negligence ... is void and unenforceable as a matter of law." *Keech v. Chrysler Corp.*, 2000 WL 33113957, *5 (Del.Super.2000).

Chrysler contends, with some justification, that the Superior Court decided an issue not before it: whether, if Chrysler is an additional insured under the Penn Na-

---

1. Merrell is joined in this argument by the American Subcontractors Association who filed an *amicus curiae* brief urging affirmance of the Superior Court on the ground that

work place safety in Delaware will be adversely affected, and construction risks unfairly allocated, if indirect indemnification is permitted under the guise of insurance.

tional policy, Chrysler may demand a defense and/or secure coverage under that policy. We agree that the question of insurance coverage is best resolved in the direct action Chrysler has already initiated against Penn National in the Superior Court.[2] But the question of whether there can be an enforceable contractual duty to secure insurance to indemnify for another's sole negligence can hardly be decided in a vacuum, if in fact insurance has been secured. This is particularly the case where § 2704, viewed in its entirety, appears to make a distinction between denying enforceability to indemnity agreements while preserving the continued viability of insurance contracts, presumably touching upon indemnification.

Moreover, there is the prospect that this issue will recur and the law in this jurisdiction is unsettled. *McDermott Inc. v. Lewis*, 531 A.2d 206, 211 (Del.1987) (*citing Darby v. New Castle Gunning Bedford Educ. Ass'n.*, 336 A.2d 209, 209 n. 1 (Del. 1975)). Accordingly, in the interest of judicial economy, we will address the interplay of the two subsections of § 2704 in situations where there is a contractual obligation to purchase insurance against a party's sole negligence and the effect of that purchase on the obligation of the insurer.

A majority of states have adopted statutory restrictions similar in format to § 2704, with the intended effect of preventing one party to a construction contract from agreeing to indemnify the other party for the latter's own negligence.[3] As we noted in *Alberici*, § 2704(a) is "clear on its face" and constitutes a statement of strong public policy. *Alberici*, 750 A.2d at 521. The Superior Court construed *Alberici's* endorsement of that public policy to extend to any indirect attempt to provide indemnification through a contractual undertaking to purchase insurance that has the effect of indemnification. The court proceeded further, however, and ruled that even if the contractual duty to provide insurance has been satisfied, the resulting coverage is unenforceable, although § 2704(b) suggests the contrary. In short, the inquiry is whether § 2704(b) permits what § 2704(a), broadly interpreted, prevents.

The response to the interplay question has not been uniform in jurisdictions that have considered it.[4] Illustrative of the sharpness of the debate is the decision of the Maryland Court of Appeals in *Heat & Power Corp. v. Air Products & Chemicals, Inc.*, 320 Md. 584, 578 A.2d 1202 (1990), a case factually similar to that before us. The Maryland statute contains a broad

**2.** *Daimler–Chrysler Corp. v. Pennsylvania National Mut. Cas. Ins. Co. and The Martin Co. Ins. Agency,* C.A. No. 01C–04–36 (Super.Ct.).

**3.** Of the thirty-nine states who have adopted some type of anti-indemnity statute, nineteen, including Delaware, have adopted an insurance savings provision. Although the Delaware statute has been amended since its original passage in 1968, the insurance savings provision reflected in § 2704(b) has been part of the statute from the beginning. (56 Del. Laws, c. 444).

**4.** *See Brzeczek v. Standard Oil Co.,* 4 Ohio App.3d 209, 447 N.E.2d 760 (1982) (provision requiring an oil refinery to be named as additional insured on the policy of a tank company was not unenforceable under Ohio's statutory prohibition against broad form indemnification); *Long Island Lighting Co. v. American Employers Ins. Co.,* 131 A.D.2d 733, 517 N.Y.S.2d 44 (N.Y.App.Div.1987), (utility named as an additional insured was entitled to be protected against loss or damage even from its own sole or concurrent negligence, despite New York statute proscribing broad form indemnity). *But see, Posey v. Union Carbide Corp.,* 507 F.Supp. 39 (M.D.Tenn. 1980) (holding broad form indemnity, including designation as additional insured, unenforceable under Tennessee's anti-indemnification statute).

prohibition against indemnification for one's own negligence but also provides that: "This section does not affect the validity of any insurance contract, workmen's compensation, or any other agreement issued by an insurer." Md.Code Ann., [Cts. & Jud. Proc.] § 5–305 (2000). The construction contract in question required the contractor to fully indemnify the owner and "obtain appropriate insurance coverage with respect to such liability." *Heat & Power Corp.*, 578 A.2d at 1203. The contractor secured liability insurance and, for an additional premium, secured an endorsement including the owner under "Persons Insured." *Id.* The majority declined to address the issue of whether a provision in a contract requiring a promisor to provide insurance coverage for the promisee's own negligence was void under the Maryland statute, but ruled that liability insurance, once issued, may create coverage for the promisor's own negligence, "even if the wrong party paid the premiums." *Heat & Power Corp.*, 578 A.2d at 1208. The majority further noted that the insurer had "collected a premium and issued an endorsement" and cannot thereafter "avoid its contractual obligations by claiming that [the contractor] was not compelled to purchase the endorsement." *Id.*

The dissenters in *Heat & Power* interpreted the anti-indemnification statute as reflecting a "strong public policy" "to bar an owner from reaping the benefits of a contractor's promise to insure the owner for the owner's sole negligence." *Id.* at 1211. The dissenters construed the insurance savings provision in the Maryland statute as preserving the viability of an insurance policy "already in existence at the time negotiations commence," but not saving a policy of insurance that was "the product of construction contract negotiations." *Id.*

There is no legislative synopsis or other statement of purpose explaining the meaning of § 2704(b) and its relationship to § 2704(a). As previously noted, the two sections were adopted together and thus there is no basis to infer that the savings provision was enacted as a reaction to a broad, all-compassing interpretation of § 2704(a). Courts in other jurisdictions examining comparable provisions have found little basis for textual interpretation, resorting ultimately to policy reasons as the rationale for the results reached. *See, e.g., Brzeczek*, 4 Ohio App.3d 209, 447 N.E.2d at 764–65; *Heat & Power Corp.*, 578 A.2d at 1208.

In our view, the majority holding in *Heat & Power* reflects a practical accommodation of the insurance savings provision with the right of a party to a construction contract to refuse, *ab initio*, and directly, to indemnify another party for that party's own negligence. Both Merrell and the *amicus* argue that preserving insurance, once issued, creates an indirect form of indemnification and risk transference that will not promote work place safety. Such an approach, it is argued, subverts a principal goal of the common law tort recovery system—forcing potential tortfeasors to "internalize" the cost of their negligent harm to others with resulting deterrent effect.

While we recognize the force of the policy argument limiting enforcement of the insurance savings provision, there are equally strong policy considerations supporting the opposite view. From the viewpoint of the injured worker, the greater the amount of insurance available to respond to his claim, the better the prospect for full compensation. Although, here, Chrysler is obviously a financially responsible entity, situations can occur where the prospects for recovery are doubtful because of the absence or limits of insur-

ance.[5] We also assume that the purchase of insurance is supported by an additional premium, the cost of which, in the usual contractual setting, is included in the bid price. Finally, if in fact an insurer issues an endorsement to cover the actions of a third party and charges a premium for that coverage, it should not be permitted to create an illusion that insurance exists. Insurance companies are sophisticated entities who can protect their own interests either in refusing to issue additional insured coverage or restricting such coverage with notice to the insured or third parties.

In the final analysis, however, the insurance savings provision reflected in § 2704(b) is a statement of legislative purpose that cannot be negated by an all-encompassing construction of the anti-indemnification policy set forth in § 2704(a). The savings provision has meaning only if

it cannot be used as a shield by insurers to decline coverage for insurance once purchased and duly issued to any insured, however identified or designated. To the extent that the Superior Court's ruling attempted to achieve that end, its ruling was both premature and lacking a statutory foundation. Accordingly, we affirm the Superior Court's ruling to the extent it relieved Merrell of any direct obligation to indemnify Chrysler for the latter's sole negligence, but reverse its decision to the extent it seeks to determine such rights as Chrysler may be able to assert under the Penn National policy.

---

**5.** At oral argument, Chrysler acknowledged that it is a limited self-insurer. While this fact does not necessarily reduce the amount of insurance available to an injured third party, it does explain Chrysler's apparent policy of seeking to be added as an additional insured on a contractor's liability policy.