**The TOLEDO EDISON CO., et al., Plaintiffs–Appellants,**

v.

**ABC SUPPLY CO., et al., Defendants–Appellees.**

No. 01–3112.

United States Court of Appeals, Sixth Circuit.

Aug. 28, 2002.

Before KENNEDY, SUHRHEINRICH, and BATCHELDER, Circuit Judges.

KENNEDY, Circuit Judge.

Plaintiff Toledo Edison appeals the district court's order granting summary judgment in favor of defendants Asplundh Tree Expert and National Union Fire Insurance Co. For the following reasons, we affirm the judgment of the district court.[1]

1. Toledo Edison has voluntarily dismissed its appeal as to defendants Frank Burg and Accident Prevention Corporation. ABC Supply Company, a party to the original litigation, was dismissed by order of the district court

## I.

On June 21, 1994, Dennie Sehlmeyer, an employee of ABC Supply Co., was seriously injured when the boom of a roofing delivery truck he was in contacted a Toledo Edison high voltage power line. Sehlmeyer filed suit in the Lucas County (Ohio) Common Pleas Court. As amended, Sehlmeyer's complaint named Toledo Edison and Asplundh as defendants. Sehlmeyer alleged, among other things, that Toledo Edison was negligent in failing to properly construct, inspect, and maintain the power line, and that Asplundh was negligent in failing to properly trim the trees surrounding the high voltage line.

During the early stages of the trial, Sehlmeyer and Asplundh reached a settlement. In addition to releasing Asplundh, the settlement agreement provided that Sehlmeyer would hold harmless Toledo Edison from any vicarious liability for Asplundh's negligence. Sehlmeyer's case against Toledo Edison proceeded to trial. The jury returned a verdict in favor of Sehlmeyer. The jury's verdict form read: "We, the jury, do hereby find for the plaintiff, Dennie M. Sehlmeyer, Jr., and against the defendants, The Toledo Edison Company and Centerior Energy Corporation, and we award compensatory damages in the amount of $1,750,000." (J.A. at 537). The jury answered the specific interrogatory questions as follows:

1. Were the defendants negligent? A: "Yes."

2. Was the defendants' negligence a proximate cause of any injury to Mr. Sehlmeyer? A: "Yes."

3. In what respect or respects were the defendants negligent? A: "Failure to meet the higher standard of care that they should of." [sic].[2]

While an appeal was pending, Toledo Edison and Sehlmeyer settled for $1,500,000.

Toledo Edison then commenced this action, suing Asplundh and National Union, among others, for indemnification and recovery of the costs of defending the *Sehlmeyer* suit. The district court granted summary judgment in favor of Asplundh and National Union, and denied Toledo Edison's cross-motions for summary judgment against those defendants. Toledo Edison appeals.

## II.

We review a district court order granting summary judgment under a *de novo* standard of review, without deference to the decision of the lower court. *Taylor v. Michigan Dept. of Corrections*, 69 F.3d 76 (6th Cir.1995); *Lake v. Metropolitan Life Ins. Co.*, 73 F.3d 1372, 1376 (6th Cir.1995). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ. Pro.56(c).

### A. Defendant Asplundh

*1. Indemnification Clause*

■ Toledo Edison argues that Asplundh was under a contractual duty to defend and indemnify Toledo Edison for

dated November 22, 1999. That order was not subsequently appealed.

**2.** The verdict form refers to more than one defendant because both Toledo Edison and its parent corporation, FirstEnergy Corp., the successor to Centerior Energy Corp., were named as defendants. Toledo Edison and FirstEnergy were the only remaining defendants at the time the case was submitted to the jury.

any liability in the *Sehlmeyer* action. Toledo Edison relies on the tree-trimming contract between the parties. Article 7(d) of the tree-trimming contract provides:

> Contractor [Asplundh] warrants and agrees to indemnify and defend Owner [Toledo Edison], and to save it ... harmless from and against any and all judgments, charges, claims, suits, or actions, arising in law or in equity ... of whatever kind, including reasonable attorneys' fees, brought by any person ... arising, in whole or in part, directly or indirectly, before, during or after completion, out of any act or omission, negligent or otherwise, of Contractor, ... in performance or furtherance of performance of this Agreement, whether or not the acts or omission complained of involve the negligence of Owner ... Provided, however, to the extent prohibited by Ohio law, the Contractor's indemnity and hold harmless obligations under this Agreement shall not apply to any liability caused by the sole or concurrent negligence or willful, wanton or reckless acts of the Owner.

The Ohio statute in question is Ohio Rev. Code § 2305.31, which reads:

> A covenant, promise, agreement, or understanding in, or in connection with or collateral to, a contract or agreement relative to the design, planning, construction, alteration, repair, or maintenance of a building, structure, highway, road, appurtenance, and appliance, including moving, demolition, and excavating connected therewith, pursuant to which contract or agreement the promisee, or its independent contractors, agents or employees has hired the promisor to perform work, purporting to indemnify the promisee, its independent contractors, agents, employees, or indemnitees against liability for damages arising out of bodily injury to persons or damage to property initiated or proximately caused by or resulting from the negligence of the promisee, its independent contractors, agents, employees, or indemnitees is against public policy and is void. Nothing in this section shall prohibit any person from purchasing insurance from an insurance company authorized to do business in the state of Ohio for his own protection or from purchasing a construction bond.

The parties dispute whether Ohio Rev. Code § 2305.31 applies to the tree-trimming contract. If it does, then the indemnity provision of the tree-trimming contract must be read to provide indemnity only for cases in which Toledo Edison is held vicariously liable for Asplundh's negligence. If it does not, then the indemnity provision is much more broad, covering any claims arising directly or indirectly out of Asplundh's performance of the contract—even if the claim involves Toledo Edison's own negligence. The district court held that § 2305.31 does apply to the tree-trimming contract because the term "appliance" in the statute includes any "accessory, fixture, or attachment to real estate." Toledo Edison admits that utility poles are "appliances," but argues that the tree-trimming contract was not covered by the statute because Asplundh was not hired to work on the poles or the lines themselves. Because the statute, by its terms, applies to contracts "in connection with or collateral to" any agreements "relative to the design, planning, construction, alteration, repair, or maintenance" of such appliances, the district court's conclusion was correct. The plain language of the statute is broad enough to reach this contract, which at least relates to the maintenance of power lines.

Because § 2305.31 applies to the tree-trimming contract, Toledo Edison's claim under the indemnification clause must fail.

A contract governed by the statute is void as against public policy if it requires a promisor to indemnify a promisee for the promisee's own negligence—whether resulting from the sole negligence of the promisee or the concurrent negligence of the promisee. *See Kendall v. U.S. Dismantling Co.*, 20 Ohio St.3d 61, 485 N.E.2d 1047, 1050 (1985). Under the last sentence of Article 7(d) of the tree-trimming contract, therefore, the contract's indemnity provision is limited to prevent indemnification for Toledo Edison's own negligence. The jury returned a verdict against Toledo Edison that was based on Toledo Edison's own negligence. Toledo Edison and its parent, FirstEnergy, were the only defendants left in the case, the complaint does not allege that Toledo Edison is vicariously liable for Asplundh's negligence in performing the tree-trimming contract, and nothing in the jury's responses to the interrogatories suggests that the jury was holding Toledo Edison vicariously liable for any negligence on the part of Asplundh.[3] Hence, Asplundh is not liable to Toledo Edison under the indemnification clause.

Even if § 2305.31 did not apply to the tree-trimming contract, Asplundh would not be liable under the indemnity provision. As will be discussed more fully below, the claims against Toledo Edison arose out of Toledo Edison's own independent negligence, not out of Asplundh's performance of the tree-trimming contract. No allegation in the complaint, nor any indication in the jury verdict, suggests that the claims against Toledo Edison are based in whole or in part on Asplundh's negligence.

## 2. Negligent Misrepresentation

 Toledo Edison's second argument against Asplundh on appeal is that the district court erred by granting summary judgment on Toledo Edison's negligent misrepresentation claim. This claim is based on Toledo Edison's allegation that Asplundh concealed the terms of the settlement agreement with Sehlmeyer from Toledo Edison. Toledo Edison argues that it was injured by continuing to defend Sehlmeyer's case even though the settlement released Toledo Edison from any vicarious liability for Asplundh's negligence. Toledo Edison now asks this court to certify to the Ohio state courts the question whether an omission can give rise to a claim for negligent misrepresentation under Ohio law. We decline to do so, and affirm the district court's judgment as to this claim.

Toledo Edison does not make any allegation that Asplundh made any affirmative misrepresentation with respect to the settlement agreement. Indeed, Toledo Edison's only complaint is that Asplundh did not share all of the terms of the settlement with Toledo Edison. Under Ohio law, omissions do not give rise to an action for negligent misrepresentation. Although the Ohio Supreme Court has not explicitly held that omissions do not constitute negligent misrepresentation, the Ohio appellate courts have done so several times. *See, e.g., Leal v. Holtvogt*, 123 Ohio App.3d 51, 702 N.E.2d 1246, 1253 (1998); *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*,

---

**3.** Toledo Edison focuses on the trial court's finding that Asplundh failed to fulfill its obligation under the tree-trimming contract to cut the tree near the Sehlmeyer line to proper clearance. As the trial court noted, however, this finding is not dispositive of the issue in this case. The jury's verdict was against Tole-do Edison, not Asplundh, and was not based on a theory of vicarious liability. That Asplundh did not properly trim the trees does not preclude a reasonable jury from concluding that Toledo Edison's negligence in failing to properly construct, inspect, and maintain the line was the cause of Sehlmeyer's injury.

115 Ohio App.3d 137, 684 N.E.2d 1261, 1269 (1996); *Zuber v. Ohio Dept. of Ins.*, 34 Ohio App.3d 42, 516 N.E.2d 244, 246–248 (1986). A federal court sitting in diversity and applying state law generally must apply the controlling law of the state's highest court. Where the highest court has not yet ruled on an issue, however, the federal court should predict how that court would rule by examining all the relevant data. "Relevant data include decisions of the state appellate courts, and those decisions should not be disregarded unless we are presented with persuasive data that the [highest court] would decide otherwise." *Allstate Ins. Co. v. Thrifty Rent–A–Car Systems, Inc.*, 249 F.3d 450, 454 (6th Cir.2001) (quoting *Kingsley Assoc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 507 (6th Cir.1995)). Hence, we hold that Asplundh's omission in not disclosing the specifics of the settlement agreement to Toledo Edison fails to make a claim for negligent misrepresentation under Ohio law.[4]

### B. Defendant National Union

As to defendant National Union, Toledo Edison argues that it was an additional named insured under Asplundh's policy, and that National Union therefore owed a duty to indemnify and defend Toledo Edison against Sehlmeyer's claim. The district court rejected Toledo Edison's argument, with respect to both the duty to indemnify and the duty to defend.

### 1. Duty to Indemnify

■ Toledo Edison devotes a significant portion of its briefs on appeal to the issue of whether § 2305.31 applies to limit the Toledo Edison's coverage under the National Union policy. Toledo Edison correctly notes that there is some tension in the Ohio caselaw regarding the application of § 2305.31 to insurance policies. We affirm without resolving this tension.

We begin by examining the language of the additional insured provision of the policy:

It is agreed that the persons insured provision of the policy is amended to include as an additional insured any person or organization, public entity or governmental entity with respect to liability arising out of operations conducted by or on behalf of the named insured, but only to the extent, with regard to coverages, and limits of liability ... as the named insured has agreed in writing prior to loss to provide insurance for such interest.

The policy states that Toledo Edison is an additional insured only for liability "arising out of" operations of Asplundh. When considering similar "arising out of" language, Ohio courts have held that such provisions do not provide indemnification for the additional insured's own negligence. *Davis v. LTV Steel Co.*, 128 Ohio App.3d 733, 716 N.E.2d 766, 769 (1998).[5]

**4.** Even if Toledo Edison is correct in arguing that the Ohio Supreme Court would follow the Restatement 2d of Torts, the Restatement provides that an omission gives rise to a negligent misrepresentation claim only where the defendant owes a *public duty* to disclose information and fails to do so. Toledo Edison argues that Asplundh had a public duty to disclose the terms of the settlement agreement to the court and/or Toledo Edison, as a party to the litigation. Toledo Edison cites no support for its contention that Asplundh had a

public duty to disclose the terms to Toledo Edison. To the extent there was a public duty to inform the court of the settlement, Asplundh did so. This claim is without merit, even were we to assume that Ohio courts would adopt the Restatement's definition of negligent misrepresentation in its entirety.

**5.** Although the *Davis* court cited to *Buckeye Union Ins. Co. v. Zavarella Bros. Constr. Co.*, 121 Ohio App.3d 147, 699 N.E.2d 127 (1997), a case that is in tension with some prior Ohio

Whether two parties to a contract covered by § 2305.31 are permitted to allocate risk through insurance policies (rather than indemnification provisions) such that a subcontractor/insured is required to insure a contractor/additional insured for the contractor's own negligence in connection with the contract is a question on which the Ohio law is confused. *Compare Buckeye Union Ins. Co. v. Zavarella Bros. Constr. Co.*, 121 Ohio App.3d 147, 699 N.E.2d 127 (1997) *with Brzeczek v. Standard Oil Co.*, 4 Ohio App.3d 209, 447 N.E.2d 760 (1982); *see also Employers' Fire Ins. Co. v. Danis Bldg. Constr. Co.*, 229 F.3d 1151 (6th Cir. 2000); *Stickovich v. City of Cleveland*, 143 Ohio App.3d 13, 757 N.E.2d 50 (2001). But the plain language of the National Union policy did not so allocate the risk. Asplundh's insurance policy covered only claims arising out of Asplundh's performance of the tree-trimming contract, and did not expressly provide for coverage of claims stemming from Toledo Edison's own negligence.[6]

Here, the jury verdict found Toledo Edison liable for its own negligence. There is no evidence that the verdict was based in any way on Asplundh's negligent performance of its tree-trimming operations. The terms of the policy simply do not provide coverage for Toledo Edison in this situation.

## 2. Duty to Defend

■ Toledo Edison argues that, notwithstanding the eventual jury verdict, National Union had a duty to defend Toledo Edison based on the allegations in Sehlmeyer's complaint. When examining the duty to defend, we look to the allegations of the complaint, rather than the ultimate outcome at trial. Where a complaint raises claims that are arguably covered by the policy, then the insurer owes a duty to defend. *See Willoughby Hills v. Cincinnati Ins. Co.*, 9 Ohio St.3d 177, 459 N.E.2d 555, 558 (1984).

The district court rejected this claim, relying in part on the limitations of

---

decisions as to the applicability of § 2305.31 to insurance policies, the interpretation of the policy at issue in *Davis* was based primarily on the plain language of the policy, not on § 2305.31's restrictions. ("The plain language of the endorsement extended coverage to LTV only with respect to liability arising out of Shafer's operations.... The phrase 'arising out of your operations' was intended to protect LTV from any liability for the negligence of Shafer's employees who would be performing the industrial cleaning at the LTV plant.") Thus, we believe that an Ohio court would interpret the language at issue here as excluding coverage for Toledo Edison's own negligence, regardless of the applicability of § 2305.31.

**6.** We recognize that *Stickovich*, a recent Ohio Court of Appeals case, suggests that the phrase "arising out of" in additional insured provisions of subcontractors' policies should be read very broadly. However, that portion of the *Stickovich* opinion was dicta, as pointed out by the dissent in that case, and does

not undermine the holding in *Davis* that such phrases are meant to insure a general contractor only against claims of vicarious liability for the subcontractor's negligence. Moreover, the complaint in that case alleged negligence that clearly arose out of the operations of the subcontractor. *See Stickovich*, 757 N.E.2d at 69. Here, the complaint made several generalized allegations against Toledo Edison, such as constructing and energizing the lines in an unsafe manner, and failing to properly inspect the lines. Unlike the allegations against the general contractor in *Stickovich*, these claims had nothing to do with the subcontractor's (here, Asplundh's) operations. Finally, we note that the majority in *Stickovich* relied on cases construing "arising out of" language in unrelated insurance contexts, such as homeowner's insurance and automobile insurance policies, without addressing *Davis*, which interpreted an additional insured provision of a commercial general liability contract—a much more relevant insurance context.

§ 2305.31. On this issue, it appears that the district court resolved on its own the unsettled question of Ohio law discussed above. Although recent Ohio cases suggest that an insurance policy pertaining to a contract that would otherwise be covered by § 2305.31 may not require a promisor to insure a promisee for the promisee's own negligence, those cases conflict with the holding of *Brzeczek*, 4 Ohio App.3d 209, 447 N.E.2d 760. In *Brzeczek*, a panel of the Ohio Court of Appeals clarified that indemnification agreements and insurance agreements are two separate things. Although public policy prevents two parties to a contract governed by § 2305.31 from agreeing that the promisor will *indemnify* the promisee for the promisee's own negligence (potentially impairing the injured party's ability to recover), the *Brzeczek* court held that two parties to such a contract could allocate the risk of loss between themselves *through insurance* in any manner they wish. *See also Stickovich*, 757 N.E.2d at 61–63 (distinguishing between indemnity contracts and insurance contracts, and holding that § 2305.31 applies only to the former). A recent Sixth Circuit case has recognized the tension between *Brzeczek* and these later cases. *Employers' Fire Ins. Co. v. Danis Bldg. Constr. Co.*, 229 F.3d 1151 (6th Cir. 2000) (refusing to resolve the issue). Given the uncertainty of Ohio law on this point, the district court's reliance on § 2305.31 was misplaced.[7]

Nevertheless, we may affirm the district court on any grounds supported by the record. *See Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co.*, 772 F.2d 214, 216 (6th Cir.1985). As discussed above, we have determined that the National Union policy protects Toledo Edison only against claims of vicarious liability for Asplundh's negligence. Although the complaint did contain some claims against Asplundh, none of the claims against Toledo Edison were even arguably based on the negligence of Asplundh; they were based instead on Toledo Edison's own independent negligence in failing to construct and maintain the lines in a safe condition. Nowhere does the complaint allege that Toledo Edison is vicariously liable for Asplundh's tree-trimming activities. Hence, National Union owed no duty to defend

### 3. Bad Faith

Finally, Toledo Edison argues that National Union's refusal to defend was made in bad faith, because National Union did not seriously consider whether it was obligated to provide a defense to Toledo Edison in the *Sehlmeyer* action. Given Toledo Edison's delay in demanding a defense and the doubtful coverage provided by the policy language, this claim has no merit.

### III.

The judgment of the district court is affirmed.

---

**7.** The district court sidestepped the tension in the Ohio cases by analogizing to an Ohio Supreme Court case addressing the question of whether § 2305.31 prevents payment of attorney's fees and costs by a promisor for the promisee's own negligence. *See* Dist. Ct. Opinion at 11 (discussing *Kemmeter v. McDaniel Backhoe Serv.*, 89 Ohio St.3d 409, 732 N.E.2d 385 (2000)). Until the Ohio Supreme Court directly addresses the issue, however, we feel that Ohio law remains uncertain as to whether § 2305.31 applies to additional insured agreements.