[This opinion has been published in *Ohio Official Reports* at 89 Ohio St.3d 409.]

KEMMETER *v.* MCDANIEL BACKHOE SERVICE; G.A. FIBBE COMPANY, APPELLEE; GIL RUEHL PLUMBING COMPANY, APPELLANT.

[Cite as *Kemmeter v. McDaniel Backhoe Serv.*, 2000-Ohio-209.]

*Contracts—Hold harmless provision in contract is enforceable if the clause as applied will not result in indemnification of a party's own negligence—R.C. 2305.31, construed and applied.*

(No. 99-1129—Submitted January 26, 2000—Decided August 9, 2000.)

CERTIFIED by the Court of Appeals for Brown County, No. CA98-10-027.

———————————

{¶ 1} On February 13, 1995, plaintiff Michael Kemmeter filed a personal injury lawsuit against defendant-appellant Gil Ruehl Plumbing Company ("Ruehl"), defendant-appellee G.A. Fibbe Co. ("Fibbe"), and defendant McDaniel Backhoe Service. Fibbe was the general contractor on a project to construct a new building for Trinity Industries, Inc. at its plant in Mt. Orab. Fibbe subcontracted the plumbing services on the project to Ruehl. Plaintiff, an employee of Trinity, claimed that he was injured when he fell into an excavation ditch at the site.

{¶ 2} Pursuant to its interpretation of the hold harmless provision in its contract with Ruehl, Fibbe asserted a cross-claim against Ruehl for indemnification. That provision reads:

"11. Hold Harmless. Subcontractor [Ruehl] hereby indemnifies and agrees to protect and hold harmless the Owner, architect, and Builder [Fibbe] from any loss, expense, damage or suits including attorney's fees arising out of any claim or demand for damages for injury to persons or property arising directly or indirectly from operations carried on for the completion of the Work, and at the Subcontractor's own cost, expense and risk shall defend any and all actions, suits or other legal proceedings that may be brought or instituted against any of them or

any such claim or demand, any [*sic*] pay or satisfy any judgment that may be rendered against any of them in any such action, suit or legal proceeding."

**{¶ 3}** The trial court bifurcated the trial, indicating that it would rule on the cross-claim after the trial on plaintiff's claims. McDaniel was dismissed from the lawsuit and the plaintiff's case against Fibbe and Ruehl proceeded to trial on April 6, 1998. On April 7, 1998, the court granted Fibbe a directed verdict.

**{¶ 4}** On April 8, the jury found in favor of the plaintiff against Ruehl, assessing damages of $1,500. The jury also found plaintiff to be thirty-five percent negligent. The trial court entered judgment in favor of the plaintiff in the amount of $975 on April 22, 1998.

**{¶ 5}** Following the trial, Fibbe filed a motion for attorney fees against Ruehl based upon the hold harmless provision. The trial court denied the motion. Fibbe appealed, and the Court of Appeals for Brown County reversed the judgment of the trial court. The court of appeals held that although the contract might facially violate R.C. 2305.31, which voids indemnification agreements in which the promisor undertakes to indemnify a promisee's negligence, the indemnification provision was not void, because Fibbe was ultimately absolved of liability at trial and was thus not seeking to indemnify its own negligence.

**{¶ 6}** On April 22, 1999, Ruehl filed a motion to certify conflict. On May 21, 1999, the court of appeals certified a conflict between its decision and that of the Lucas County Court of Appeals in *Toledo Edison v. P & W Painting & Sandblasting Co., Inc.* (Sept. 11, 1992), Lucas App. No. L-91-412, unreported, 1992 WL 217522, which held that a contract that violates R.C. 2305.31 is void and that a promisee may not recover under the contract, regardless of whether it has been absolved of liability.

**{¶ 7}** The appellate court below posed the following question to this court: "The issue for certification is whether a hold harmless clause which violates R.C. 2305.31 on its face is enforceable pursuant to *Kendall v. U.S. Dismantling Co.*

(1985), 20 Ohio St.3d 61 [20 OBR 360, 485 N.E.2d 1047], if the clause as applied will not result in indemnification of a party's own negligence."

{¶ 8} The cause is now before this court upon our determination that a conflict exists.

_____

*Droder & Miller Co., L.P.A.*, and *Jeffrey T. Kenney*, for appellee.

*Kohnen & Patton, L.L.P.*, and *Anthony J. Caruso*, for appellant.

_____

**PFEIFER, J**.

{¶ 9} We find that a hold harmless provision is enforceable pursuant to *Kendall v. U.S. Dismantling Co.* (1985), 20 Ohio St.3d 61, 20 OBR 360, 485 N.E.2d 1047, if the clause as applied will not result in indemnification of a party's own negligence.

The Statute

{¶ 10} R.C. 2305.31 provides:

"A[n] * * * agreement * * * in connection with or collateral to, a contract or agreement relative to the * * * construction * * * of a building * * *, pursuant to which contract or agreement the promisee * * * has hired the promisor to perform work, purporting to indemnify the promisee * * * against liability for damages arising out of bodily injury to persons or damage to property initiated or proximately caused by or resulting from the negligence of the promisee, * * * is against public policy and is void."

{¶ 11} Basically, the statute says that a subcontractor may not indemnify a general contractor for the general contractor's own negligence. This court addressed the effect of R.C. 2305.31 in *Kendall v. U.S. Dismantling Co., supra*, at paragraph one of the syllabus:

"R.C. 2305.31 prohibits indemnity agreements, in the construction-related contracts described therein, whereby the promisor agrees to indemnify the promisee

for damages caused by or resulting from the negligence of the promisee, regardless of whether such negligence is sole or concurrent."

{¶ 12} The public policy at the heart of the statute is to make parties responsible for their own negligence. The statute voids contract terms where a promisee attempts to shift responsibility for its negligence to the promisor. Conversely, a contract term that does not address the indemnification of the promisee's own negligence is not affected by the statute.

The Contract

{¶ 13} We note as an initial matter that the certified question asked this court to address "a hold harmless clause which violates R.C. 2305.31 on its face." In reality, the agreement in this case in no way violates the statute. The indemnification agreement here read, in pertinent part, as follows:

"11. Hold Harmless. Subcontractor [Ruehl] hereby indemnifies and agrees to protect and hold harmless the Owner, architect, and Builder [Fibbe] from any loss, expense, damage or suits including attorney's fees arising out of any claim or demand for damages for injury to persons or property arising directly or indirectly from operations carried on for the completion of the Work * * *."

{¶ 14} Section 2 of contract defines "work" in terms of the work of the subcontractor. The subcontractor's work is set forth in a list in Section 2. That section reads, in relevant part:

"2. *Work of Subcontractor*. Subcontractor will provide all of the materials, equipment, labor and all other things necessary to perform and complete the following work:

"1.) All work is to be in direct compliance with the G.A. Fibbe Company drawings dated July of 1993.

"2.) Work includes all plumbing, heating, and process piping on the New Fab Manufacturing building to ensure a complete job.

"3.) Exhaust fan furnished and installed by others.

"4.) Wrapping of sanitary sewer with 1" Ameflex covering is included; excavation by others.

"5.) Electrical controls and wiring by others.

"6.) All clean-up is a part of this contract.

"7.) Attachment 'A' is hereby made a part of this contract.

"8.) HVAC is existing and has been verified.

"(hereinafter called 'the Work') in accordance with the general contract."

{¶ 15} Certainly, Section 2 could have been better drafted. The parties muddled matters somewhat by attempting to clarify what was not "work" as a part of their definition of what was "work." Appellant argues that placing items that Ruehl was not responsible for within the definition of "work" would make Ruehl liable for those items under the indemnification agreement. Since Ruehl would thus provide indemnification for negligence caused by work it did not perform, Ruehl argues that the indemnification agreement violates R.C. 2305.31.

{¶ 16} The surplusage merely adds an attempted clarification of the contract, not additional potential liabilities for Ruehl. For instance, item 3, "exhaust fan furnished and installed by others," simply states that the exhaust fan is something that Ruehl need not provide under the contract. Certainly, there could be no breach of contract claim against Ruehl if the exhaust fan were not installed.

{¶ 17} In this contract, the necessary language still resides within the superfluous. The contract clearly sets forth the work that Ruehl is responsible for, and clearly equates that with the contractual term "work." Without the parentheticals, "work" includes "all plumbing, heating and process piping on the New Fab Manufacturing building to ensure a complete job," the "wrapping of sanitary sewer with 1" Ameflex covering," and "all clean-up." Ideally, contracts do not contain what one party is not obligated to do within the same section as that which the party is obligated to do. But the lack of perfection here does not make

the contract incapable of being understood. The contract does not heap additional potential liabilities upon Ruehl.

Analysis

{¶ 18} Whether the contract facially violates R.C. 2305.31 or not, the relevant inquiry in a case under this statute is whether a promisor would be indemnifying a promisee for the promisee's own negligence under the contract. The necessary corollary to a prohibition of indemnifying a promisee's negligence is a prohibition of the indemnification of costs associated with a promisee's *alleged* negligence. If a plaintiff alleges negligence against a promisee, a promisor may not agree to undertake the defense costs the promisee incurs in defending itself against claims regarding its own negligence.

{¶ 19} Fibbe claims that when it sought to enforce the terms of the contract, its own negligence was not at issue. Fibbe seeks indemnity for attorney fees that it alleges arose out of claims involving *Ruehl's* negligence. R.C. 2305.31 does not prohibit indemnification protection from the negligence of the promisor, and if Fibbe's attorney fees arose from claims involving Ruehl's negligence, then the indemnification agreement is both enforceable and applicable.

{¶ 20} However, in this case, Fibbe could be accused of its own negligent behavior and successfully defend itself at trial, but still be responsible for its own attorney fees. A successful verdict does not mean that colorable claims were not made against Fibbe itself. Fibbe can recover attorney fees paid to defend against alleged negligence only if that alleged negligence arose solely from activities under *Ruehl's* contractual control. Both the statute and the contract language at issue, wherein Ruehl assumes liability for no one's negligence but its own, require that result.

{¶ 21} Here, the trial court should have first determined whether the causes of action the plaintiff alleged against Fibbe arose from activities under Ruehl's contractual control. If so, Ruehl could have assumed Fibbe's defense, and the

prospect of having to pay the fees of two sets of attorneys would not have arisen. If plaintiff's claims arose from activities under Fibbe's contractual control, then Fibbe would have to assume its own defense costs, no matter the outcome at trial.

{¶ 22} Since that issue is heretofore unresolved, we reverse the judgment of the appellate court and remand the cause to the trial court to determine whether the claims against Fibbe arose from activities under the contractual control of Ruehl. If so, Ruehl would be responsible for Fibbe's attorney fees under the terms of the contract.

*Judgment reversed*
*and cause remanded.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, COOK and LUNDBERG STRATTON, JJ., concur.

_____