OPINION
{¶ 1} The Lubrizol Corporation ("Lubrizol") appeals from the judgments of the Lake County Common Pleas Court, which granted summary judgment in favor of appellee, The Ohio Casualty Insurance Company ("Ohio Casualty"), and denied Lubrizol's motion for summary judgment; granted in part and denied in part Lubrizol's motion for summary judgment against appellee, Michael Lichtenberg Sons Construction Inc., ("Lichtenberg"); entered judgment for Lichtenberg on a jury verdict; and denied Lubrizol's motions for judgment not withstanding the verdict and a new trial. We affirm.
 {¶ 2} Lubrizol entered into a contract with Valvoline to supply Valvoline with a viscosity modifier blending system. Lichtenberg was to install the system.
 {¶ 3} The contract between Valvoline and Lubrizol contained an indemnity clause. The contract between Valvoline and Lichtenberg contained the following indemnity clause:
 {¶ 4} "[Lichtenberg] agrees to protect, indemnify, hold harmless and defend [Valvoline] * * * from and against all losses, damages, demands, claims, suits, and other liabilities (including attorney fees and other expenses of litigation) because of:
 {¶ 5} "(I) bodily injury, including death at anytime resulting therefrom,
 {¶ 6} "(II) * * *
 {¶ 7} "(III) * * *
 {¶ 8} "(IV) violation of or failure to comply with any applicable law, regulation, rule or order which occur [sic], either directly or indirectly, in connection with performance of the Work or by reason of [Lichtenberg] and its employees, workers, agents, servants, subcontractors and vendors being present on [Valvoline's] premises, except to the extent the liability, loss or damage is attributable to and caused by the sole and exclusive negligence of [Valvoline] * * *."
 {¶ 9} The contract between Valvoline and Lichtenberg also required Lichtenberg to obtain commercial general liability insurance with limits of "not less than" $2 million and to name Valvoline as an insured on such policy. The contact also stated, "[Lichtenberg] is an independent contractor. [Valvoline] shall exercise no control over the method and means of accomplishing the Work other than to see that the desired results are achieved at the lowest possible cost to [Valvoline]." Lichtenberg obtained insurance from Ohio Casualty and named Valvoline as an additional insured on two policies, a commercial general liability policy, and an umbrella policy.
 {¶ 10} After the viscosity modifier blending system was assembled, but before the construction of the building that was to house it, representatives of Lubrizol and the equipment manufacturer had to "check out" the system by physically examining and testing its pipes, fittings, pumps, and seal pot. Under the terms of the contract, Lichtenberg was required to provide personnel and equipment to be used in the "check out."
 {¶ 11} After the system was installed, Lichtenberg notified Valvoline the system was ready to be "checked out." Lynn James, an employee of Lubrizol traveled to Valvoline's Cincinnati facility for the "check out." However, on the day James arrived, the unit was not ready for "check out" as had been claimed. The next day, James helped Lichtenberg's subcontractors with tasks to make the system ready for "check out." One of the things James took upon himself to do was connect tubing to the seal pot. This task required James to be on the elevated platform where the system sat. James had to use a ladder to reach the seal pot as it was located six feet above the platform.
 {¶ 12} James got a ladder and climbed it to reach the seal pot. As James tried to loosen a nut with a wrench, the wrench slipped. James lost his balance, fell backward off the ladder, and landed in an unguarded concrete pit that surrounded the platform. James suffered serious and permanent injuries because of the fall.
 {¶ 13} James sued Valvoline in the United States District Court for the Southern District of Texas. Valvoline demanded that Lubrizol and Lichtenberg indemnify it for James's claims Lubrizol agreed to do so; Lichtenberg and its insurer, Ohio Casualty refused.
 {¶ 14} Valvoline eventually settled James's claims. Lubrizol paid Valvoline $8,579,889.20 to indemnify Valvoline for the settlement. Valvoline then assigned to Lubrizol all its rights against Lichtenberg and Ohio Casualty.
 {¶ 15} Lubrizol filed the instant action against Ohio Casualty and Lichtenberg seeking indemnification for the payments it made to Valvoline.[1] Specifically, Lubrizol alleged it was entitled to indemnification from Lichtenberg under theories of express and implied indemnification. Lubrizol also sought a declaration that Ohio Casualty was obligated to indemnify Valvoline (and thus Lubrizol) and a determination of the amount of the coverage available under the Ohio Casualty policy.
 {¶ 16} The parties filed cross motions for summary judgment. The trial court granted Ohio Casualty's motion for summary judgment, finding the purported assignment from Valvoline to Lubrizol was invalid, as Ohio Casualty had not consented to the assignment as required by the policy. The trial court denied Lichtenberg's motion for summary judgment, and granted Lubrizol's motion in part stating, "Lubrizol Corporation, as an assignee of [Valvoline], is entitled to indemnification as a matter of law, if a jury determines at trial that [Lichtenberg] committed a breach of duty, and proximately caused the injuries sustained by Lubrizol's employee, Lynn James."
 {¶ 17} Lubrizol's claims against Lichtenberg proceeded to jury trial. The jury returned a general verdict in favor of Lichtenberg. Lubrizol moved for judgment notwithstanding the verdict and a new trial. The trial court denied these motions.
 {¶ 18} Lubrizol timely appeals the trial court's judgments raising five assignments of error:
 {¶ 19} "[1.] The trial court erred in granting Ohio Casualty summary judgment and in denying Lubrizol summary judgment as against Ohio Casualty.
 {¶ 20} "[2.] The trial court incorrectly denied Lubrizol complete summary judgment on its express indemnity claim against Lichtenberg.
 {¶ 21} "[3.] The trial court incorrectly denied Lubrizol's motion for judgment notwithstanding the verdict on its express indemnity claim against Lichtenberg.
 {¶ 22} "[4.] The trial court incorrectly denied Lubrizol's motion for a new trial on its express indemnity claim against Lichtenberg.
 {¶ 23} "[5.] The jury verdict on Lubrizol's express indemnity claim against Lichtenberg was against the manifest weight of the evidence."
 {¶ 24} As we consider appellant's assignments of error, two points must be remembered. One, Lubrizol's claims are based on its rights as an assignee of Valvoline, i.e., it stands in Valvoline's shoes and has only those rights Valvoline would have against Ohio Casualty and Lichtenberg. Two, the contract between Valvoline and Lichtenberg had two requirements relevant to this case: Lichtenberg was required to indemnify Valvoline for claims brought against Valvoline, "except to the extent the liability, loss or damage is attributable to and caused by the sole negligence of [Valvoline]."[2] And Lichtenberg was required to obtain a general commercial liability insurance policy and name Valvoline as an additional insured.
 {¶ 25} In its first assignment of error, Lubrizol argues the trial court erred in granting Ohio Casualty summary judgment on Lubrizol's claims for indemnification and declaratory judgment and in denying Lubrizol's motion for summary judgment.
 {¶ 26} We review a grant of summary judgment de novo.Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105, i.e., we review the trial court's judgment independently and without deference to its determination. Lexford Prop. Mgmt.,L.L.C. v. Lexford Prop. Mgmt., Inc., (2001) 147 Ohio App.3d 312,315.
 {¶ 27} Summary judgment is proper when: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion is made, that conclusion is adverse to that party. Harless v. Willis Day Warehousing, Co.,Inc. (1978), 54 Ohio St.2d 64, 66.
 {¶ 28} "[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis of the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." Dresher v. Burt
(1996), 75 Ohio St.3d 280, 293.
 {¶ 29} If the moving party has satisfied this initial burden, the nonmoving party has a reciprocal burden under Civ.R. 56(E) to set forth facts showing there is a genuine issue for trial. Id. at 293.
 {¶ 30} There is no dispute as to any material fact between Lubrizol and Ohio Casualty. The question is which party is entitled to judgment as a matter of law. The trial court granted summary judgment for Ohio Casualty, stating:
 {¶ 31} "In this case, it is undisputed that Ohio Casualty did not consent to the assignment of rights; hence, [Valvoline's] assignment of insurance rights to Lubrizol was invalid, and Ohio Casualty is entitled to judgment as a matter of law on Lubrizol's claim that it is subrogated to the rights of [Valvoline] as an additional insured under the Ohio Casualty policy."
 {¶ 32} Lubrizol first argues it was entitled to summary judgment against Ohio Casualty based on the doctrine of legal subrogation. Legal subrogation is an equitable doctrine, wherein the right to subrogation arises from the relationship of the parties and is not dependent on contract or statute for its application. American Ins. Co. v. Ohio Bureau of Workers'Compensation (1991), 62 Ohio App.3d 921, 924. Legal subrogation "shifts a loss from one merely secondarily liable on a debt to one more primarily liable on the debt who in equity should have paid it in the first instance." Id.; see, also, MarylandCasualty Co. v. Gough (1946), 146 Ohio St. 305 at paragraph two of the syllabus, (stating, "Subrogation is an equitable doctrine under which, as the result of the payment of a debt by a person other than the principal debtor, there is a substitution of the former in the place of the creditor to whose rights he succeeds in relation to the obligation of the debtor, to the end that the burden of obligation be ultimately placed upon those to whom it primarily belongs, although in the recognition of the rights of others it may have been, for a time, borne by those who are only secondarily liable for the debt.")
 {¶ 33} Lubrizol argues that because it repaid Valvoline for Valvoline's payment to James, Lubrizol became subrogated to the benefits due Valvoline under the Ohio Casualty policy. Lubrizol's argument is valid as far as it goes; however, for Lubrizol to recover against Ohio Casualty it must demonstrate Valvoline had a right to payment from Ohio Casualty. It has failed to do so.
 {¶ 34} Valvoline was an additional insured under the Ohio Casualty policies; however, both the general commercial liability policy and umbrella policy excluded coverage for "liability arising out of the sole negligence of the additional insured." In the underlying case, James sued Valvoline for its negligence. James made no claim of negligence against any other party. Lubrizol argues James sued Valvoline for negligence only as the premises owner, (i.e., secondary or passive negligence) and that Lichtenberg's negligence was primary or active. However, we have reviewed the complaint in the underlying action and James clearly sued Valvoline for its sole, active negligence. Lubrizol failed to present any evidence of the type listed in Civ.R. 56(C) to show James sued Valvoline under a vicarious liability theory such that Ohio Casualty's policies would apply. Therefore, even though Lubrizol's payment to Valvoline entitled it to legal subrogation, Valvoline had no right to payment from Ohio Casualty under the clear terms of the policies.
 {¶ 35} In Davis v. LTV Steel Co., Inc. (1998)128 Ohio App.3d 733, 737, this court analyzed "additional insured" language and concluded, "In other words, the purpose of the additional insured endorsement was to protect the additional insured * * * from being vicariously liable for the tortuous acts of the named insured * * *." While the additional insured language at issue in Davis differed from that at issue here, the analysis is the same. The additional insured language was to protect Valvoline from vicarious liability for the negligence of Lichtenberg. Here, at least as to the evidence presented in the summary judgment exercise, there is no evidence showing Lichtenberg was negligent; hence, Valvoline, and in turn, its assignee Lubrizol, were not entitled to coverage under Ohio Casualty's policy.
 {¶ 36} Lubrizol next argues the trial court erred in concluding Valvoline's assignment to Lubrizol was invalid. Lubrizol argues Ohio Casualty was not required to consent to Valvoline's assignment of its right to payment. Because we have concluded that Valvoline had no right to payment under the clear language of the policies, we need not consider whether Ohio Casualty was required to consent to the assignment.
 {¶ 37} Lubrizol raises other issues under its first assignment of error; however, our resolution of the above issues renders the remaining issues raised under this assignment of error moot.
 {¶ 38} Appellant's first assignment of error is without merit.
 {¶ 39} In its second assignment of error, Lubrizol argues the trial court erred in denying Lubrizol's motion for summary judgment on its express indemnity claim against Lichtenberg. We disagree.
 {¶ 40} As we discussed above, the contract between Valvoline and Lichtenberg contained an indemnity clause. That clause provided in relevant part:
 {¶ 41} "[Lichtenberg] agrees to protect, indemnify, hold harmless and defend [Valvoline] * * * from and against all losses, damages, demands, claims, suits, and other liabilities (including attorney fees and other expenses of litigation) because of:
 {¶ 42} "(I) bodily injury, including death at anytime resulting therefrom,
 {¶ 43} "(II) * * *
 {¶ 44} "(III) * * *
 {¶ 45} "(IV) violation of or failure to comply with any applicable law, regulation, rule or order which occur, either directly or indirectly, in connection with performance of the Work or by reason of [Lichtenberg] and its employees, workers, agents, servants, subcontractors and vendors being present on [Valvoline's] premises, except to the extent the liability, loss or damage is attributable to and caused by the sole and exclusive negligence of [Valvoline] * * *."
 {¶ 46} R.C. 2305.31 provides:
 {¶ 47} "A covenant, promise, agreement, or understanding in, or in connection with or collateral to, a contract or agreement relative to the design, planning, construction, alteration, repair, or maintenance of a building, structure, highway, road, appurtenance, and appliance, including moving, demolition, and excavating connected therewith, pursuant to which contract or agreement the promisee, or its independent contractors, agents or employees has hired the promisor to perform work, purporting to indemnify the promisee, its independent contractors, agents, employees, or indemnitees against liability for damages arising out of bodily injury to persons or damage to property initiated or proximately caused by or resulting from the negligence of the promisee, its independent contractors, agents, employees, or indemnitees is against public policy and is void. Nothing in this section shall prohibit any person from purchasing insurance from an insurance company authorized to do business in the state of Ohio for his own protection or from purchasing a construction bond."
 {¶ 48} In its brief in opposition to Lubrizol's motion for summary judgment, Lichtenberg argues the indemnity agreement violated R.C. 2305.31 because it required Lichtenberg (the promisor) to indemnify Valvoline (the promisee) for Valvoline's own negligence. The trial court rejected this argument as do we. Although arguably subsection (I) of the indemnification clause could be read broadly to cover Valvoline's own negligence, as applied in the instant case, Lubrizol, as Valvoline's assignee, is not attempting to enforce the indemnification clause to recover for Valvoline's negligence. So construed, the indemnification clause does not violate R.C. 2305.31. See, generally, Kemmeter v. McDaniel Backhoe Service,89 Ohio St.3d 409, 2000-Ohio-209.
 {¶ 49} Lubrizol argues the trial court erred by finding a genuine issue of material fact existed as to whether Lichtenberg breached any duty and whether the breach of such duty proximately caused James's injury. Lubrizol essentially contends the trial court added a requirement that it prove the elements of a negligence claim in addition to those elements required to prove an express indemnity claim. However, a review of the record reveals Lubrizol misconstrues the trial court's ruling.
 {¶ 50} The trial court's judgment entry stated, "[Lubrizol], as assignee of [Valvoline], is entitled to indemnification as a matter of law, if a jury determines at trial that [Lichtenberg] committed a breach of duty, and proximately caused the injuries sustained by Lubrizol's employee, Lynn James." Upon first reading, this sentence seems to require Lubrizol to prove negligence. However, upon careful review, it becomes clear that what the sentence means is Lubrizol, as Valvoline's assignee, must prove Lichtenberg breached a contractual duty, and that such breach caused James's injury. That is, Lubrizol, as Valvoline's assignee, must prove Lichtenberg had a duty under the contract, to do or not do something in connection with "the Work," and that such act or failure to act caused injury to James, and thus triggered Lichtenberg's duty to indemnify.
 {¶ 51} While the trial court's judgment entry was worded inartfully, it is clear the trial court properly applied the law in reaching its judgment and did not impose upon Lubrizol the burden of proving the elements of negligence on its express indemnity claim. Further, the evidence establishes a genuine issue of fact existed as to whether Lichtenberg breached a contractual duty and whether such breach proximately caused James's injury.
 {¶ 52} Appellant's second assignment of error is without merit.
 {¶ 53} Lubrizol treats its third, fourth, and fifth assignments of error together in its brief as all three raise the same issues, albeit, under different standards of review; therefore, we treat them together here.[3]
 {¶ 54} Lubrizol first argues the evidence overwhelmingly established James suffered his injury in connection with "the Work" and thus, Lichtenberg had an unconditional duty to indemnify. Lubrizol then argues the evidence clearly established Lubrizol proved the elements necessary for indemnification when the party seeking indemnification had entered into a voluntary settlement with the injured party under Globe Indemnity Co. v.Schmitt (1944), 142 Ohio St. 595. As this latter issue is dispositive of Lubrizol's third, fourth, and fifth assignments of error, we address it first.
 {¶ 55} In Globe, the Ohio Supreme Court held that in an action for indemnity after voluntary settlement, the party seeking indemnification must prove, "that he has given proper and timely notice to the one from whom such indemnity is sought, that he was legally liable to respond, and that the settlement made was fair and reasonable." Id. at paragraph four of the syllabus.
 {¶ 56} In this case, the parties stipulated Lichtenberg received proper and timely notice, and for purposes of this appeal, we will assume without deciding that the settlement made by Valvoline with James was fair and reasonable. The issue then becomes was Valvoline "legally liable to respond" to James in the Texas lawsuit?
 {¶ 57} Lubrizol, citing out of state authority, argues, "legally liable to respond" as used in Globe means, "Was Valvoline potentially liable to James?" In essence, Lubrizol contends it has proven Valvoline was "legally liable to respond" by demonstrating James sued Valvoline, Valvoline was required to defend the suit, and in some way Valvoline potentially may have been found liable. If this were a correct interpretation ofGlobe we would agree with Lubrizol; however, our research and analysis leads us to the conclusion that "legally liable to respond" means "Was Valvoline actually liable to James?"
 {¶ 58} As the Fourth District Court of Appeals noted inBlair v. Mann (April 8, 1999), 4th Dist. No. 98CA35, 1999 Ohio App. LEXIS 1630:
 {¶ 59} "Globe does not speak in terms of potential liability as it cites Tugboat Indian Co. v. A/S Ivarans Rederi
(1939), 334 Pa. 15, 5 A.2d 153. The Pennsylvania Supreme Court's pronouncement of the general rule of indemnity is stated * * *: `to recover indemnity where there has been such voluntary payment, however, it must appear that the party paying was himself legally liable and could have been compelled to satisfy the claim. * * *'" Id. at 7. Accord, Jones v. Ruhlin Co. (Oct. 24, 1990), 9th Dist. No. 14568, 1990 Ohio App. LEXIS 4692, 8.
 {¶ 60} In the instant case, Lubrizol continually maintained, and the trial court found as a matter of law, that Lichtenberg was an independent contractor, solely responsible for the work site. Further, Lubrizol argued that under the terms of the contract, Lichtenberg was responsible for ensuring the safety of the work site, including ensuring James's safety. Lubrizol, as Valvoline's assignee, continually maintained Valvoline was not responsible for James's injury as it had no control over the work site. While Lubrizol presented some evidence to establish Valvoline was potentially liable to James (because it had been sued as the property owner), we cannot say the trial court erred in denying Lubrizol's motion for judgment notwithstanding the verdict, abused its discretion in denying Lubrizol's motion for new trial, or that the jury's verdict was against the manifest weight of the evidence.
 {¶ 61} Appellant's third, fourth, and fifth assignments of error are without merit.
 {¶ 62} For the foregoing reasons, the judgment of the Lake County Court of Common Pleas is affirmed.
O'Neill, J., concurs.
O'Toole, J., concurs in judgment only.
[1] Lubrizol also named Flowtronex Internation, Inc., and Flowtronex (collectively, "Flowtronex"), as defendants; however, Lubrizol voluntarily dismissed its claims against Flowtronex.
[2] As we discuss, infra, R.C. 2305.31 precluded Lichtenberg from indemnifying Valvoline for Valvoline's own negligence.
[3] Lubrizol's third assignment of error challenges the trial court's denial of Lubrizol's motion for judgment notwithstanding the verdict on Lubrizol's express indemnity claim. We review this assignment of error de novo. Blatnick v. Dennison,148 Ohio App.3d 494, 504, 2002-Ohio-1682. Lubrizol's fourth assignment of error challenges the trial court's denial of Lubrizol's motion for a new trial on its express indemnity claim. We review this assignment of error only for an abuse of discretion. Padden v.Herron (Dec. 24, 1998), 11th Dist. No. 97-L-223, 1998 Ohio App. LEXIS 6296, 6-7. Lubrizol's fifth assignment of error argues the jury's verdict on Lubrizol's express indemnity claim was against the manifest weight of the evidence.