[Cite as *Selective Ins. Co. of Am. v. Ohio Dept. of Rehab. & Corr.*, 2012-Ohio-6357.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

SELECTIVE INSURANCE COMPANY OF AMERICA

Plaintiff/Counter Defendant

v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION

Defendant/Counter
Plaintiff/Third-Party Plaintiff

v.

DDC+, INC., et al.

Third-Party Defendants

Case No. 2009-07407

Judge Clark B. Weaver Sr.

DECISION

{¶ 1} On August 30, 2012, each of the parties, with the exception of third-party defendants, filed motions for summary judgment as to their respective claims and defenses. Plaintiff/counter defendant, Selective Insurance Company of America (Selective), moved for summary judgment both as to its complaint and the counterclaim filed by defendant/counter plaintiff/third-party plaintiff, Ohio Department of Rehabilitation and Correction (ODRC). ODRC moved for summary judgment in its favor as to Selective's complaint, its own counterclaim, and its third-party complaint against third-party defendants, DDC+, Inc. (DDC) and Pete Tudela.

{¶ 2} On September 12, 2012, the court held an oral hearing on the cross-motions for summary judgment. Civ.R. 56(C) states, in part, as follows:

{¶ 3} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  No evidence or stipulation may be considered except as stated in this rule.  A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."  *See also Williams v. First United Church of Christ*, 37 Ohio St.2d 150 (1974); *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317 (1977).

{¶ 4} The procedural history of this litigation and many of the relevant facts are set forth in the opinion of the Tenth District Court of Appeals in *Selective Insurance Company of America,* 10th Dist. No. 11AP-597, 2012-Ohio-1314.

{¶ 5} "In February 2007, DDC+, Inc. ('DDC') submitted a bid to the state of Ohio to upgrade the generator at the Northeast Pre-Release Center.  Prior to the bid submittal, DDC secured a bid guaranty and contract bond from Selective.  The state accepted DDC's

{¶ 6} bid, and DDC entered into a contract with ODRC to serve as the principal contractor on

{¶ 7} the project.

{¶ 8} "DDC subcontracted with Buckeye Power Sales Company, Inc. ('Buckeye') for the purchase and installation of a new generator.  DDC, however, failed to completely pay Buckeye.  To attain the monies due it, Buckeye commenced the process to establish a mechanic's lien on payments due to DDC under the contract between

DDC and ODRC. On March 12, 2008, Buckeye served ODRC and Pete Tudela, president of DDC, with an

{¶ 9} affidavit of claim in the amount of $359,059.

{¶ 10} "Pursuant to R.C. 1311.28, upon receiving the affidavit, ODRC should have 'detain[ed] from the principal contractor or from the balance of the funds remaining in the contract with the principal contractor, an amount, up to the balance remaining in the contract, that does not in the aggregate exceed the claim.' When it received Buckeye's affidavit, ODRC had yet to pay DDC $400,242.84 under the contract. Despite the mandate of R.C. 1311.28, ODRC did not detain $359,059.00 of the $400,242.84 as amounts became due to DDC. Rather, during July through December 2008, ODRC issued payments to DDC totaling $376,130.99. After issuing those payments, ODRC had only $24,111.85 in unpaid contract funds.

{¶ 11} "In addition to establishing a mechanic's lien on payments due DDC, Buckeye also filed a claim against the bond. In July 2008, Selective issued a $100,000 payment to Buckeye. Selective issued a subsequent payment of $27,466 to Buckeye in January 2009.

{¶ 12} "On February 27, 2009, Buckeye filed suit against ODRC, DDC, Tudela, and Selective in the Franklin County Court of Common Pleas. Against DDC and Tudela, Buckeye alleged claims for breach of contract, violation of the Ohio Prompt Payment Act, fraud, and theft. Against Selective, Buckeye alleged a breach of contract claim for failure to pay its entire claim against the bond. Against ODRC, Buckeye sought recovery under R.C. 1311.32 of the $24,111.85 remaining in the contract between ODRC and DDC.

{¶ 13} "Ultimately, Buckeye settled its claims against ODRC and Selective. In the resulting settlement agreement, ODRC agreed to pay Buckeye $24,111.85 in exchange for Buckeye's dismissal of its claims against ODRC. Selective agreed to pay Buckeye

an additional $30,000.  In return, Buckeye agreed to dismiss its claim against Selective and assign its claims against DDC and ODRC to Selective.

{¶ 14} "On September 3, 2009, Selective initiated the instant lawsuit against ODRC in the Court of Claims of Ohio.  In its complaint, Selective asserted two claims: (1) violation of R.C. 1311.28, which required ODRC to retain funds remaining in DDC's contract up to the amount of Buckeye's claim, and (2) failure to protect Selective's collateral, *i.e.,* the contract balance remaining when ODRC received Buckeye's affidavit of claim.  ODRC responded by filing a counterclaim, alleging that Selective was obligated to indemnify it from any damage suffered due to DDC's failure to pay Buckeye.  ODRC also filed a third-party complaint against DDC and Tudela, alleging claims for fraud, indemnity and contribution, and breach of contract." *Id.* at ¶ 2-8.

{¶ 15} "[T]he trial court sua sponte dismissed the entire case for lack of subject matter jurisdiction.  The trial court concluded that Selective's and ODRC's claims arose from Buckeye's efforts to enforce its mechanic's lien.  Because subcontractors could sue the state to enforce mechanic's liens prior to the enactment of the Court of Claims Act, the trial court held that it lacked jurisdiction over the action.  The trial court entered judgment dismissing the complaint, counterclaim, and third-party complaint on June 9, 2011." *Id.* at ¶ 9.

{¶ 16} In reversing that judgment and concluding that this court did have subject matter jurisdiction of Selective's complaint, the court of appeals stated:

{¶ 17} "In the case at bar, Selective is not attempting to enforce Buckeye's mechanic's lien. Instead of seeking recovery from a fund held by the state, Selective is seeking money damages for the state's failure to retain contract payments following its receipt of Buckeye's affidavit of claim." *Id.* at ¶ 22.

{¶ 18} The court of appeals further stated:

{¶ 19} "Selective has 'repeatedly tweaked' the legal basis for its second claim. Before this court, Selective contends that its claim is premised on an alleged breach of

the construction contract, as well as the common-law duty an obligee owes a surety to protect the collateral. Whether Selective proceeds under either or both of these theories, it has alleged a legal claim for money damages. As we stated above, the Court of Claims has exclusive jurisdiction over civil actions against the state for money damages that sound in law." (Citations omitted.) *Id.* at ¶ 31.

{¶ 20} Upon remand, Selective continues to pursue several legal theories in support of its claim. However, to the extent that Selective alleges a claim premised upon ODRC's admitted violation of R.C. 1311.28, the court notes that the statute does not create a private right of action for damages against a stakeholder. Similarly, to the extent that Selective alleges a claim for relief against ODRC based upon an alleged breach of the construction contract, Selective is not a party in privity with ODRC. Indeed, Selective concedes that it is nether a signatory to the construction contract nor a third-party beneficiary thereto.

{¶ 21} Based upon the undisputed evidence, the court concludes that Selective's claim for money damages is premised upon the common law theory of equitable subrogation. Under this theory, a surety of a government contractor may recover progress payments made to a defaulting contractor where such payments were made after the government entity received notice of the contractor's default. *See Lumberman's Mutual Casualty Company v. United States,* 654 F.3d 1305 (Fed.Cir.2011).

{¶ 22} The theory of equitable subrogation is summarized in Restatement of the Law 3d, Suretyship and Guarantee, Section 37 (1996) as follows:

{¶ 23} "Impairment of Suretyship Status"

{¶ 24} "(1) If the obligee acts to increase the secondary obligor's risk of loss by increasing its potential cost of performance or decreasing its potential ability to cause the principal obligor to bear the cost of performance, the secondary obligor is discharged as described in subsections (2) and (3), and the secondary obligor has a

claim against the obligee as described in subsection (4).  An act that increases the secondary obligor's risk of loss by increasing its potential cost of performance or decreasing its potential ability to cause the principal obligor to bear the cost of performance is an 'impairment of suretyship status.'

**{¶ 25}** "* * *

**{¶ 26}** "(3) If the obligee impairs the secondary obligor's recourse against the principal obligor by:

**{¶ 27}** "* * *

**{¶ 28}** "(d) *impairing the value of an interest in collateral securing the underlying obligation (Section 42); * * * the secondary obligor is discharged from its duties pursuant to the secondary obligation to the extent set forth in those sections in order to prevent the impairment of recourse from causing the secondary obligor a loss.*"  (Emphasis added.)

**{¶ 29}** In the context of this case, Selective is the secondary obligor, ODRC is the obligee, DDC is the primary obligor and Buckeye is an intended beneficiary of the secondary obligation.  The construction contract represents the primary obligation.  There is no doubt that ODRC violated Article 15.6 of the underlying construction contract by making progress payments to DDC after receiving notice of Buckeye's claim affidavit.  ODRC's wrongful conduct impaired Selective's interest in the collateral securing its secondary obligation.  Under the Restatement, ODRC's wrongful conduct had the legal effect of discharging Selective from its duties under the bond.  In other words, ODRC's impairment of Selective's collateral provided Selective with a legal defense to Buckeye's claim.

**{¶ 30}** There is also no dispute that when a demand for payment was made by Buckeye, Selective had knowledge that its suretyship status had been impaired by ODRC.  The question becomes whether Selective may still recover from ODRC, even though Selective made payments to Buckeye after having knowledge of facts which

would have discharged it from its obligations under the bond. That question must be answered in the affirmative.

{¶ 31} Section 37(4)(ii) of the Restatement provides in relevant part: "If the obligee impairs the secondary obligor's suretyship status * * * before the secondary obligor performs a portion of the secondary obligation, if the secondary obligor then performs * * * *for the benefit of an intended beneficiary who can enforce the secondary obligation notwithstanding such impairment, the secondary obligor has a claim against the obligee with respect to such performance to the extent that such impairment would have discharged the secondary obligor with respect to that performance.*"  (Emphasis added.)

{¶ 32} Pursuant to the above-cited rule, Selective still has a claim against ODRC to recover the payments Selective made to Buckeye on behalf of DDC inasmuch as Buckeye, as an intended beneficiary of the bond, had a right to enforce Selective's secondary obligation in an action brought pursuant to R.C. 1311.311.  As noted above, such an action was filed by Buckeye in Franklin County and ultimately settled by agreement.

{¶ 33} In ODRC's response to the motion for summary judgment, it contends that, in light of the settlement of the Franklin County action, the validity of Buckeye's lien claim is a factual issue which precludes judgment in Selective's favor.[1]  ODRC argues that if Buckeye's lien is found by this court to be invalid, Selective's payments to Buckeye were voluntary and gratuitous.[2]  The court disagrees.

{¶ 34} There is no claim herein that the Franklin County settlement was made in bad faith or that it is the product of fraud or collusion.  Accordingly, there are no genuine factual issues as to the validity of Buckeye's lien.

---

[1]Although ODRC was also a party to the Franklin County case and a signatory to the settlement agreement, ODRC's status was that of a stakeholder with regard to the remaining contract funds.

[2]Article 15.6.3 of the underlying construction contract states that, absent a timely objection, the contractor is deemed to have assented to the correctness of the claim affidavit.

{¶ 35} ODRC argues, in the alternative, that even if Selective were permitted to recover damages upon any of the asserted legal theories, then ODRC would be able to recover the same sum from Selective by making a claim against the bond. However, as stated above, ODRC's wrongful conduct had the affect of discharging Selective's obligations to ODRC under the bond. The payment Selective subsequently made to Buckeye did not have the effect of reviving Selective's bond obligation to ODRC. Moreover, if the court adopts ODRC's view, Selective will be left with a relatively worthless right of indemnity against DDC, even though Selective is guilty of no wrongdoing.

{¶ 36} ODRC further argues that any recovery by Selective must be reduced by Buckeye's collateral recovery pursuant to R.C. 2743.02(D). Again the court disagrees. R.C. 2743.02(D) provides that "[r]ecoveries against the state shall be reduced by the aggregate of insurance proceeds, disability award, or other collateral recovery received by the claimant."

{¶ 37} In this case, Selective is the "claimant" as the term is used in R.C. 2743.02(D). Selective's claim of equitable subrogation vindicates its own right to access available contract funds in the event of a default by DDC. As such the claim is a direct action against ODRC in equity. The claim is not brought by Selective as a subrogee or assignee either of Buckeye or DDC.[3] Accordingly, R.C. 2743.02(D) shall not be applied to reduce Selective's recovery.

{¶ 38} Based upon the foregoing, the court finds that the only conclusion to be drawn from the undisputed evidence is that ODRC wrongfully impaired Selective's suretyship rights and that Selective is entitled to judgment against ODRC on its claim of equitable subrogation, as a matter of law. Accordingly, Selective's motion for summary

---

[3]ODOT's reliance on *Heritage Ins. Co. v. ODOT*, 103 Ohio St.3d 513, 2004-Ohio-6766, is misplaced inasmuch as that case discussed the application of R.C. 2743.02(D) in the context of a claim brought by a subrogated insurer.

judgment shall be granted and judgment shall be entered in favor of Selective for $207,466,[4] the total amount of payments made by Selective to Buckeye, plus prejudgment interest in an amount to be determined. ODRC's motion for summary judgment as to Selective's complaint shall be denied.

{¶ 39} With respect to the third-party complaint, ODRC argues that if it is found liable to Selective on the complaint, then DDC has breached its contract with ODRC and must indemnify it for such loss. The grounds for indemnification are that DDC breached Article 15.5 of the underlying construction contract by failing to pay Buckeye. ODRC's third-party complaint also alleges fraud against both DDC and Pete Tudela, President of DDC. The basis of such claim is that Tudela continued to submit pay applications to ODRC on behalf of DDC, and accepted payment therefor, even after it had been served with Buckeye's claim affidavit.[5]

{¶ 40} Article 15.5 entitled: "PROMPT PAYMENT" states in part:

{¶ 41} "15.5.1 If a Subcontractor or Material Supplier requests payment in time to allow the Contractor to include the request in the Contractor's Contractor Payment Request, the Contractor shall pay within ten (10) days after receipt of payment from the State * * *

{¶ 42} "15.5.3 If the Contractor fails to comply with the provision of Paragraph GC 15.5, the Contractor shall pay to the applicable Subcontractor or Material Supplier eighteen (18) percent interest, compounded annually, on any unpaid amount."

{¶ 43} ODRC has submitted the affidavit of James Weller in support of its motion for summary judgment. He is employed by ODRC as Operations Manager in the Construction Bureau. In his affidavit, he avers:

---

[4]The total amount paid by Selective to Buckeye.
[5]Neither DDC nor Tudela have filed a cross-motion for summary judgment as to the third-party complaint.

**{¶ 44}** "At the time the affidavit of claim was submitted by Buckeye Power Sales on the generator upgrade project at Northeast Prerelease Center in Cleveland Ohio, I was the Acting Bureau Chief; * * *

**{¶ 45}** "Despite Pete Tudela accepting service of the affidavit of claim, he continued submitting pay applications to the State falsely attesting that he had no knowledge of liens having been filed on the project."

**{¶ 46}** Based upon the evidence presented, there are both legal and factual issues which remain to be litigated regarding ODRC's claims against DDC and Tudela. First, the remedy for a breach of Article 15.5 is that interest shall accrue and be owed to the subcontractor on the unpaid balance. Second, the scope of the indemnity provision upon which ODRC relies is limited by R.C. 2305.31 to circumstances where the harm is not caused by the sole or concurrent negligence of the owner. *See Kovach v. Warren Roofing & Illuminating Co.,* 2007 Ohio 2514 (May 24, 2007); *Kemmeter v. McDaniel Backhoe Serv.,* 89 Ohio St.3d 409, 2000-Ohio-209. Additionally, the court believes that the development of further facts surrounding both the payments to DDC and the settlement of the action in Franklin County is required before judgment may be rendered upon either the fraud or breach of contract claims.

**{¶ 47}** Accordingly, ODRC's motion for summary judgment as to its third-party complaint is DENIED.



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

SELECTIVE INSURANCE COMPANY OF AMERICA

    Plaintiff/Counter Defendant

    v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION

    Defendant/Counter
    Plaintiff/Third-Party Plaintiff

    v.

DDC+, INC., et al.

    Third-Party Defendants

Case No. 2009-07407

Judge Clark B. Weaver Sr.

<u>JUDGMENT ENTRY</u>

{¶ 48} An oral hearing was conducted in this case upon the cross-motions for summary judgment. For the reasons set forth in the decision filed concurrently herewith, plaintiff/counter defendant's motion for summary judgment is GRANTED and judgment is entered in favor of plaintiff/counter defendant in the amount of $207,491, which includes the filing fee. Defendant/counter plaintiff/third-party plaintiff's motion for

summary judgment as to plaintiff/counter defendant's complaint is DENIED, as is its motion for summary judgment on its third-party complaint. A status conference is scheduled for *December 19, 2012, at 9:30 a.m.*, to discuss further proceedings.

_____
CLARK B. WEAVER SR.
Judge

cc:

Bryan L. Jeffries
4653 Trueman Boulevard, Suite 100
Hilliard, Ohio 43026

James E. Rook
Kristin S. Boggs
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Justin D. Owen
Lee M. Brewer
501 West Schrock Road, Suite 104
Westerville, Ohio 43081

006
Filed November 16, 2012
To S.C. Reporter March 22, 2013